**Joe Ann PUSTEJOVSKY, individually and as personal representative of the Heirs and Estate of Henry J. Pustejovsky, Jr., Petitioner,**

v.

**RAPID–AMERICAN CORPORATION, Respondent.**

No. 98–1128.

Supreme Court of Texas.

Argued Sept. 8, 1999.

Decided Nov. 30, 2000.

Janice Pennington, Lisa R. Kivett, Brent M. Rosenthal, Laurie Meggesin, Russell W. Budd, Mary Elizabeth Skelnik, Melissa K. Hutts, Kevin Duane McHargue, Baron & Budd, Dallas, Peter Andrew Kraus, Waters &·Kraus, Dallas, for Petitioner.

Kelly C. Wooster, Thomas M. Peterson, Brett M. Schuman, Brobeck Phleger & Harrison, San Francisco, Kevin F. Risley, Sheinfelk Maley & Kay, Rick W. Thamm, Beth McGregor, Bean & Manning, Houston, Joseph Casseb, Goode Casseb & Jones, San Antonio, Susan M. Hull, Jenkins & Gilchrist, P.C., Dallas, for Respondent.

Justice GONZALES delivered the opinion of the Court.

This case raises the question whether a plaintiff may bring separate actions for separate latent occupational diseases caused by exposure to asbestos. Specifically, we must decide whether the single action rule or the statute of limitations bars Henry Pustejovsky, who settled an asbestosis suit with one defendant in 1982, from bringing suit against different defendants twelve years later for asbestos-related cancer. The trial court granted summary judgment for the defendants based on limitations. The court of appeals affirmed, holding that under the single action rule, Pustejovsky's cause of action for cancer accrued, and limitations began to run, when he knew of the asbestosis. 980 S.W.2d 828, 833. We conclude, however, that neither the single action rule nor the statute of limitations bars Pustejovsky's later claim for asbestos-related cancer. Accordingly, we reverse the court of appeals' judgment and remand this case to the trial court for further proceedings consistent with this opinion.

## I

Henry J. Pustejovsky, Jr. was exposed to asbestos from 1954 to 1979 while employed as a metal pourer with Alcoa Aluminum in Rockdale, Texas. In the late 1970s or early 1980s, Pustejovsky learned from co-workers that exposure to asbestos could be harmful. In 1982, Pustejovsky

consulted an attorney, who arranged for a doctor to examine Pustejovsky to determine whether exposure to asbestos fibers at work had affected his health. The doctor found scarring on Pustejovsky's lungs and diagnosed him with asbestosis, a non-malignant disease caused by inhaling asbestos fibers. The doctor also informed him that the asbestosis resulted from his years of working around asbestos products. In 1982, Pustejovsky sued Johns–Manville Corporation, an asbestos supplier, for damages related to his asbestosis. That suit was promptly settled out of court for approximately $25,000.

In 1994, when Pustejovsky was 59 years old, he began experiencing shortness of breath, cold-like symptoms, and fatigue. In September of that year, a doctor examined Pustejovsky and diagnosed him with malignant pleural mesothelioma, a cancerous tumor of the lung lining. Two months later, Pustejovsky joined with three other plaintiffs and sued Rapid American Corporation, Owens Corning Fiberglas Corporation (Owens Corning), Pittsburgh Corning Corporation, and other suppliers of asbestos products. These four plaintiffs sought damages for their injuries caused by exposure to asbestos. In May 1995, Pittsburgh Corning filed a motion for summary judgment, asserting that Pustejovsky's claim is barred by the statute of limitations, which began to run for all asbestos-related claims, including mesothelioma, when Pustejovsky was diagnosed with asbestosis in 1982. Owens Corning and Rapid–American subsequently joined Pittsburgh Corning's motion.

Pustejovsky contested the motions with undisputed expert medical evidence that mesothelioma and asbestosis are separate conditions resulting from distinct disease processes. Because the conditions are distinct, Pustejovsky argued, limitations for mesothelioma was not triggered by the diagnosis of his asbestosis in 1982. The trial court granted defendants' motions for summary judgment and severed Pustejovsky's claim against defendants on the grounds that the statute of limitations began to run in 1982, when Pustejovsky discovered his asbestosis.[1] The court of appeals affirmed the summary judgment, holding that Pustejovsky's second action was barred by the single action rule and the statute of limitations. 980 S.W.2d at 829. The court determined that asbestosis and mesothelioma are but different damages resulting from the same injury by exposure to asbestos. The court concluded that Pustejovsky could not sue for mesothelioma after settling his asbestosis claim without violating the single action rule's prohibition against claim splitting. Although the court of appeals acknowledged that other jurisdictions had rejected the single action rule as a bar to latent disease claims, it held that any decision to do so here should be by our Court. 980 S.W.2d at 831–33.

Pittsburgh Corning, Owens Corning, and Rapid–American sought review in this Court. Following oral argument and the submission of the case, first Pittsburgh Corning, then Owens Corning, filed for bankruptcy and, after severance, are no longer parties in this appeal.[2]

## II

The applicable standard of review is whether Rapid American, as the summary-judgment movant, established that there is no genuine issue of material

---

1. Pustejovsky died during the course of the litigation, and his wife, Joe Ann, substituted as a plaintiff, individually and as representative of her husband's estate.

2. The bankruptcy stays abated any action by this Court. *See* Tex.R.App P. 8.2. We granted unopposed motions to sever Pittsburgh Corning Corporation and Owens Corning Fiberglas Corporation and reinstate this cause against Rapid American Corporation under Texas Rule of Appellate Procedure 8.3. The cause *Pustejovsky v. Pittsburgh Corning Corporation*, under the new cause number 00–0561, and *Pustejovsky v. Owens–Corning Fiberglas Corporation*, under the new cause number 00–1181, remain abated while the automatic bankruptcy stays are in place.

fact and that it is entitled to judgement as a matter of law on the grounds it set forth in its motion. *See* Tex.R.Civ.P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant moving for summary judgment on the affirmative defense of limitations must prove conclusively the elements of that defense. *Velsicol Chem. Corp. v. Winograd*, 956 S.W.2d 529, 530 (Tex.1997). When, as here, the plaintiff pleads the discovery rule as an exception to limitations, the defendant has the burden of negating that exception as well. *Id.*

Pustejovsky pleaded the discovery rule, supported by the affidavit testimony of an expert on the subject of mesothelioma, Dr. James Robb, as well as Pustejovsky's affidavit and medical records. As Dr. Robb testified, asbestosis is a non-malignant disease caused by inhaling asbestos dust. When inhaled, asbestos fibers may begin a scarring process that destroys air sacs in the lung where oxygen is transferred into the blood. The condition is marked by decreased pulmonary function and lung capacity. Symptoms include shortness of breath, a dry and unproductive cough, and in some cases, weight loss and chest pain. The scarring is progressive and incurable, but it is not always fatal. According to Dr. Robb, the latency period between toxic exposure and manifestation of asbestosis is typically fifteen to twenty-five years.

Dr. Robb testified further that mesothelioma is a malignant tumor in the membranes lining the lungs, abdomen, and chest. The cancer is a very painful and severely debilitating disease that almost always causes the victim's death within seven to fifteen months of diagnosis. The latency period for mesothelioma is generally over fifteen years, averages thirty to forty years, and in some cases can extend as long as seventy years.

Dr. Robb explained that mesothelioma does not have any causal connection to asbestosis. While both diseases are associated with exposure to asbestos, mesothelioma is not dependant on a precondition of asbestosis, and asbestosis does not necessarily develop into, or cause the development of, mesothelioma. According to Dr. Robb, approximately fifteen percent of asbestosis victims also contract mesothelioma. *See* 980 S.W.2d at 829.

In his summary judgment response, Pustejovsky argued that because the diseases are separate, distinct conditions, his asbestosis diagnosis could not trigger limitations for a disease that would not manifest for another twelve years. Because he brought suit for mesothelioma in less than a year of its diagnosis, Pustejovsky contends that limitations does not bar his present suit.

The defendants did not offer medical evidence controverting Dr. Robb's testimony. Rather, Rapid American argues that the fact that asbestosis and mesothelioma are distinct diseases does not matter because both diseases were caused by the same course of exposure to asbestos. Rapid American contends that the single action rule requires that the statute of limitations for all causes of action based on asbestos exposure began to run from the 1982 diagnosis of asbestosis. Therefore, it argues, Pustejovsky's present claim for mesothelioma is time-barred as a matter of law. Accordingly, we first consider existing jurisprudence about our single action rule.

### III

The single action rule, also known as the rule against splitting claims, provides a plaintiff one indivisible cause of action for all damages arising from a defendant's single breach of a legal duty. *See Gideon v. Johns–Manville Sales Corp.*, 761 F.2d 1129, 1136–37 (5th Cir.1985). Our jurisprudence "was designed to prevent more than one suit growing out of the same subject-matter of litigation; and our decisions from the first have steadily fostered this policy." *Galveston, H. & S.A.*

*Ry. Co. v. Dowe,* 70 Tex. 5, 7 S.W. 368, 371 (1888). As one court has explained:

> The reason for the rule lies in the necessity for preventing vexatious and oppressive litigation, and its purpose is accomplished by forbidding the division of a single cause of action so as to maintain several suits when a single suit will suffice.

*Eastland County v. Davisson,* 13 S.W.2d 673, 676 (Tex. Comm'n App.1929, judgm't adopted). This equitable doctrine is a species of res judicata that prohibits splitting a single cause of action and subsequently asserting claims that could have been litigated in the first instance. *See Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex. 1985); *Pierce v. Reynolds,* 160 Tex. 198, 329 S.W.2d 76, 78 (1959). In a recent accounting malpractice case, we reiterated a corollary rule about the accrual of a cause of action:

> [A] cause of action accrues when the plaintiff knows or reasonably should know that he had been legally injured by the alleged wrong, however slightly. The fact that the plaintiff's actual damages may not be fully known until much later does not affect the determination of the accrual date. . . .

*Murphy v. Campbell,* 964 S.W.2d 265, 273 (Tex.1997).

Rapid–American contends that Texas courts have already applied the single action rule and the principles reiterated in *Murphy* in asbestos-related cases to bar any second suits. In *Pecorino v. Raymark Indus., Inc.,* the plaintiff filed suit after he was diagnosed with mesothelioma, even though he had previously settled a lawsuit with the same defendant for asbestosis. 763 S.W.2d 561, 562–63 (Tex.App.— Beaumont 1989, writ denied). The defendant moved for summary judgment on the grounds that the plaintiff had signed a release in the first suit, and that the limitations period for the second suit had run. The court held that the plaintiff's first suit and the release conclusively demonstrated that the plaintiff knew at the time of his asbestosis diagnosis that he had suffered a serious, severe legal injury as a result of his asbestos exposure. *Id.* at 569. The court rejected adopting a "separate action" rule, and explained: "Texas law is now well settled that a plaintiff has but one cause of action for the losses, injuries and damages arising from a single breach of duty, a single causal connection, being a single cause of action." *Id.* (citing *Tennessee Gas Transmission Co. v. Fromme,* 153 Tex. 352, 269 S.W.2d 336, 337–38 (1954)). The court further stated that the limitations period for the plaintiff's one cause of action began to run upon his discovery that he had been harmed, even if he had not yet suffered the full extent of that harm:

> The several pleadings of the [plaintiff] are based upon the same exposure and the same years of exposure to asbestos and asbestos-containing products. Under the decisional precedents of our state, one cause of action arose. Hence, this cause of action could not be split for the purpose of recovering additional monetary damages.

*Id.* at 571.

The Fifth Circuit Court of Appeals also has considered the single action rule in the context of asbestos litigation. In *Gideon v. Johns–Manville Sales Corp.,* the Fifth Circuit rejected a challenge admitting the plaintiff's evidence that he had a greater than fifty percent chance of developing asbestos-related cancer. 761 F.2d 1129 (5th Cir.1985). There, the court found that the evidence was admissible because Texas law not only entitles, but requires plaintiffs to recover all of the damages arising out of a single wrong as part of a single cause of action:

> [The plaintiff's] injury is . . . the inhalation of fibers and the invasion of his body by those fibers, thus causing him physical damage. Under Texas law, therefore, [the plaintiff] has but one cause of action for all the damages caused by the defendants' legal wrong; the diseases that have developed and

will in probability develop are included within this cause of action, for they are but part of the sequence of harms resulting from the alleged breach of legal duty. [He] could not split his cause of action and recover damages for asbestosis, then later sue for damages caused by such other pulmonary disease as might develop, then still later sue for cancer should cancer appear.

*Id.* at 1137 (footnotes omitted). As the court explained, under Texas law the cause of action arises from the wrongful act itself, and not from the harm it may cause: "The cause of action 'inheres in the causative aspects of a breach of legal duty, the wrongful act itself, and not in the various forms of harm which result therefrom....' [A plaintiff] does not have a discrete cause of action for each harm." *Id.* at 1136–37.

Shortly after *Gideon,* the Fifth Circuit held in *Graffagnino v. Fibreboard Corp.,* that, under Texas law, exposure to asbestos can give rise to only a single cause of action for all injuries that are caused by such exposure, whether or not all the injuries have become manifest when the cause of action accrues. 776 F.2d 1307, 1308 (5th Cir.1985). In *Graffagnino,* the plaintiff sued the same defendant in a second action after settling a previous action against the defendant. Based on the release signed in the settlement and the single action rule in Texas, the Fifth Circuit held that the district court was correct to dismiss the second action. *Id.* at 1309.

Our court has not considered the effect of the single action rule on multiple asbestos-related injuries. Rapid–American argues that we should adopt the reasoning from the federal and state courts of appeals, and apply them to preclude Pustejovsky's current action. It argues that Pustejovsky was entitled to one cause of action for the defendants' single breach of duty. Thus, it contends that Pustejovsky's single action accrued in 1982 because Pustejovsky's asbestosis put him on notice that he had suffered a work-related injury. Furthermore, relying on *Murphy,* Rapid

American argues that Pustejovsky's lack of knowledge of the scope of his damages from his exposure to asbestos does not affect the accrual of his cause of action. Following these general rules, Rapid American contends, Pustejovsky's claims for damages related to mesothelioma accrued in 1982, and therefore, limitations bars his current action.

## IV

For several decades, courts have grappled with the problem of applying limitations to toxic exposure diseases with protracted latency periods, particularly when the exposure can cause more than one disease with different latency periods. *See generally, Maskin, et al., Overview and Update of Emerging Damage Theories in Toxic Tort Litigation,* C837 ALI ABA 629, 642–50 (1993). Like the courts in *Pecorino, Gideon,* and *Graffagnino,* some courts consider the single action rule to be unmalleable and have applied the rule to different diseases caused by the same exposure. *See e.g., Howell v. Celotex Corp.,* 904 F.2d 3, 4–5 (3d Cir.1990) (applying Pennsylvania law). But other courts and commentators have recognized that the single action rule is a catch 22 for victims of multiple latent diseases, if applied to them the same as traditionally applied to victims of traumatic injuries. *See Sopha v. Owens–Corning Fiberglas Corp.,* 230 Wis.2d 212, 601 N.W.2d 627, 634–35 (1999); *Devlin v. Johns–Manville Corp.,* 202 N.J.Super. 556, 495 A.2d 495, 502 (N.J.Super. Ct. Law Div. 1985); *see generally* Green, *The Paradox of Statutes of Limitations in Toxic Substances Litigation,* 76 CAL. L.REV. 965, 1002 (1988); Note, *Claim Preclusion in Modern Latent Disease Cases: A Proposal for Allowing Second Suits,* 103 HARV.L.REV. 1989, 1989–97 (1990). A plaintiff who sues for asbestosis is precluded from any recovery for a later-developing lethal mesothelioma. But the discovery rule would preclude a plaintiff with asbestosis from waiting to see if an asbestosis-related cancer later develops if,

as Rapid American contends, all damages for exposure to asbestosis must be brought in a single suit.

A plaintiff suing for asbestosis could join that claim with a claim for the prospect of developing cancer in the future. But the plaintiff can only recover future damages for injury that the plaintiff has a reasonable medical probability of developing. *See Insurance Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713–14 (Tex.1966). According to the expert testimony here, only fifteen percent of asbestosis victims ever develop mesothelioma. If so, then no asbestosis plaintiff could establish future damages with the requisite certainty. Rapid American's position means for the asbestosis victim that any later-developing terminal condition must go unredressed.

In part because of the harshness of its application of the single action rule, the court in *Dartez v. Fibreboard Corp.*, opined that Texas courts would permit recovery for the fear of developing cancer in the future. *Dartez*, 765 F.2d 456, 467 (5th Cir.1985). Other courts have likewise recognized a cause of action for fear of cancer. *See Herber v. Johns–Manville Corp.*, 785 F.2d 79 (3d Cir .1986); *In re Moorenovich*, 634 F.Supp. 634, 637 (D.Me.1986); *Giovanetti v. Johns–Manville Corp.*, 372 Pa.Super. 431, 539 A.2d 871, 874 (1988); *Eagle-Picher Indus., Inc. v. Cox*, 481 So.2d 517, 523 (Fla.Dist.Ct.App.1985), *rev. denied*, 492 So.2d 1331 (Fla.1986). *See generally*, Renia, *Recovery for Fear of Cancer and Increased Risk of Cancer: Problems with* Gideon *and a Proposed Solution*, 7 REV. LITIG. 39, 40–42 (1987). Additionally, some courts have allowed recovery for an increased risk of cancer on proof of less than a reasonable probability that the plaintiff will actually get cancer. *See, e.g.*, *Brafford v. Susquehanna Corp.*, 586 F.Supp. 14, 17–18 (D.Colo.1984); *Boryla v.. Pash*, 960 P.2d 123, 127 (Colo.1998); *United States v. Anderson*, 669 A.2d 73, 78 (Del.1995).

Most jurisdictions that have considered the question, however, allow separate actions for separate diseases arising from the same exposure to asbestos.[3] An early

---

3. *See Hamilton v. Asbestos Corp.*, 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403, 405 (2000) (holding that a plaintiff, who sued the same defendant in two suits for two asbestos related diseases, was not barred by California's statute of limitations and waived the issue of the single action rule); *Sopha v. Owens–Corning Fiberglas Corp.*, 230 Wis.2d 212, 601 N.W.2d 627, 630 (1999) (creating an exception to the single action rule and statute of limitations to allow a second action for a latent mesothelioma against the same defendant after a prior action for asbestosis); *Wilson v. Johns–Manville Sales Corp.*, 684 F.2d 111, 119–21 (D.C.Cir.1982) (concluding diagnosis of asbestosis did not start statute of limitations for mesothelioma caused by same exposure to asbestos); *Miller v. Armstrong World Indus., Inc.*, 817 P.2d 111, 113 (Colo. 1991) (en banc) (holding diagnosis of pleural thickening did not start statute of limitations for later claim for asbestosis); *Wilber v. Owens–Corning Fiberglas Corp.*, 476 N.W.2d 74, 78 (Iowa 1991) (finding claim for mesothelioma did not accrue when plaintiff was diagnosed with asbestosis); *Pierce v. Johns–Manville Sales Corp.*, 296 Md. 656, 464 A.2d 1020, 1028 (1983) (holding claim for lung cancer not barred by earlier diagnosis of asbestosis); *Larson v. Johns–Manville Sales Corp.*, 427 Mich. 301, 399 N.W.2d 1, 9 (1986) (concluding claims for asbestos-related cancer not barred by earlier diagnosis of asbestosis when no prior action for asbestosis brought); *Marinari v. Asbestos Corp.*, 417 Pa.Super. 440, 612 A.2d 1021, 1028 (1992) (diagnosis of pleural thickening did not start statute of limitations for action based on lung cancer), *modified on other grounds, Simmons v. Pacor, Inc.*, 543 Pa. 664, 674 A.2d 232, 237–39 (1996) (discussing that a claim based on diagnosis of asymptomatic pleural plaques is sufficient to state a limited claim for medical monitoring damages; discussing with approval that part of *Marinari* that addressed the statute of limitations question); *Potts v. Celotex Corp.*, 796 S.W.2d 678, 685 (Tenn.1990) (holding claim for mesothelioma not barred by earlier diagnosis of asbestosis); *VaSalle v. Celotex Corp.*, 161 Ill.App.3d 808, 113 Ill.Dec. 699, 515 N.E.2d 684, 687–88 (1987) (holding claim for lung cancer not barred by earlier diagnosis of asbestosis); *but see Joyce v. A.C. & S., Inc.*, 785 F.2d 1200, 1203–05 (4th Cir.1986) (concluding, under Virginia law, diagnosis of pleural thickening triggered statute of limitations for all asbestos-related disease); *Matthews v. Celotex Corp.*, 569 F.Supp. 1539, 1542–43 (D.N.D.1983) (holding, under North

case to treat distinct asbestos diseases separately is *Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111 (D.C.Cir.1982). In that case, an employee who developed mesothelioma several years after being diagnosed with asbestosis died without ever filing suit. When his widow sued, his employer asserted that the suit was untimely because limitations began to run upon the asbestosis diagnosis. The controlling issue was whether manifestation of any asbestos-related disease triggered limitations for all separate and distict diseases. Speaking for the court, Judge Ruth Bader Ginsberg commented:

> In latent disease cases, [the] community interest would be significantly undermined by a judge-made rule that upon manifestation of any harm, the injured party must then, if ever, sue for all harms the same exposure may (or may not) occasion some time in the future.

*Id.* at 119. The court concluded in that case that the plaintiff's asbestosis diagnosis did not start limitations to run on later developing mesothelioma. *Id.* at 119–20.

Recently, the Wisconsin Supreme Court considered the issue in *Sopha v. Owens–Corning Fiberglas,* 230 Wis.2d 212, 601 N.W.2d 627 (1999). There the plaintiff's claim for a non-malignant asbestos-related condition was dismissed on the merits and with prejudice several years before he filed a claim for malignant mesothelioma. In considering whether limitations or the prior suit bars the claim, the court considered the interplay between Wisconsin's single action rule, its discovery rule, and its rule limiting recovery of damages to those that can be proven as "reasonably certain consequences." *Id.* at 633. After reviewing the policy those rules advanced, the court concluded that the earlier diagnosis did not trigger the running of limitations for mesothelioma. *Id.* 634–36. The court further held that res judicata did not bar the plaintiff's claim because the development of mesothelioma could not have

reasonably been predicted when the earlier suit was brought. *Id.* at 639.

## V

Since the 1980s, when the federal court of appeals in *Gideon, Dartez,* and *Graffagnino,* and the state court of appeals in *Pecorino* prognosticated how we might rule on applying the single action rule to asbestos litigation, we have considered pertinent issues in two cases that inform our analysis in this case. Most recently, in *Temple-Inland v. Carter,* we held that an individual who has been exposed to asbestos, but has not developed an asbestos-related disease, could not recover mental anguish damages for the reasonable fear of possible future asbestos-related diseases. 993 S.W.2d 88, 89 (Tex.1999). We noted that the existence of a physical injury may not be sufficient for recovery of mental anguish damages when the injury has not produced disease despite a reasonable fear that such disease will develop. *Id.* at 92. We explained that while the law generally allows recovery of mental anguish damages in personal injury cases, allowing recovery for fear of a disease when the plaintiff has no symptoms results in systematic under-compensation of those who actually contract the disease, and a windfall for those who do not. *Id.* at 93. We expressly did not decide in *Temple-Inland* whether "a plaintiff who has developed an asbestos-related disease may recover mental anguish damages for a reasonable fear of developing other asbestos-related diseases." *Id.* at 94 (discussing *Dartez v. Fibreboard Corp.,* 765 F.2d 456 (5th Cir.1985)). While we do not resolve that question here either, the same concerns about under-compensation in some cases, and windfalls in other cases, militate against a cause of action for fear of cancer as an acceptable substitute for a cause of action for existing cancer.

In *Childs v. Haussecker,* we held for the first time that the discovery rule applies to

Dakota law, claim for lung cancer was barred by limitations because plaintiff was earlier

diagnosed with asbestos-related pulmonary disease).

claims for latent occupational diseases. 974 S.W.2d 31, 37–8 (Tex.1998). We held that accrual of the limitations period is deferred in such cases until "a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related." *Id.* at 33. In *Childs*, we balanced the principles underlying the statute of limitations, including the benefit of repose, judicial economy, and the injustice to plaintiffs caused by strictly applying the statute of limitations. *Id.* at 38. We recognized the important protective purposes the statute of limitations serves, and held that deferring accrual in latent disease cases until an innocent plaintiff discovers his or her injuries does not betray those purposes. *Id.* We expressly held open the question whether limitations should run for separate diseases from the same exposure that manifest at different times. *Id.* at 41.

## VI

◼ Pustejovsky asks our court to follow those jurisdictions that treat claims for distinct asbestis diseases as separate causes of action and hold that Pustejovsky's asbestosis settlement does not bar his suit for mesothelioma. In considering Pustejovsky's arguments, we begin by noting, as we did in *Childs*, that it is the Court's responsibility to determine the accrual date for Pustejovsky's cause of action for mesothelioma for limitations purposes. *Childs*, 974 S.W.2d at 36. The statute of limitations applicable to Pustejovsky's claims provides that an action to recover damages for injuries to the person shall be commenced within two years after the day the cause of action accrues. *See* TEX.CIV. PRAC. & REM.CODE § 16.003(a). The statute does not define the accrual date, and thus it falls to the courts to establish when such claims accrue. *Childs*, 974 S.W.2d at 36. Also, we note that the single action rule is a judicially-created doctrine. Consequent-

ly, it is appropriate for us to consider whether allowing a suit for mesothelioma here significantly undermines the interests the single action rule and res judicata represent.

◼ As we noted earlier, the single action rule is a species of res judicata. Strictly speaking, res judicata's policy concerns about protecting a defendant from multiple litigation are not present here because none of the parties Pustejovsky sued for his mesothelioma were parties to the suit and settlement of his asbestosis claim with Johns Manville Corporation. Res judicata does not apply without an identity of parties or those in privity with them. *See Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996). But res judicata is implicated here because it informs what should constitute a single cause of action.

◼ A single action rule for separate latent occupational diseases in this context would be incompatible with the "transactional" approach for res judicata that we established in *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 631 (Tex.1992). Under that approach, the subject matter of a suit is based on the factual matters that make up the gist of the complaint. *Id.* at 630. Any claim that arises out of those facts should be litigated in the same lawsuit. *Id.* But the transactional approach set out in *Barr* does not necessarily penalize a plaintiff for not bringing a claim arising out of the same facts that nonetheless could not have been litigated in the initial action. *See id.* at 631 (stating that "A subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, *could have been litigated* in a prior suit.") (emphasis added).

We have held that a cause of action generally accrues upon injury even if the fact of injury is not known, or not all of the resulting damages have yet occurred. *Murphy,* 964 S.W.2d at 270. Rapid–American contends that the single action rule

must be applied even if it means the loss of a recovery for damages that could not have been litigated in the prior suit. Generally, the single action rule and the transactional approach to res judicata are not in tension. In cases in which the injury is progressive, a plaintiff exercising due diligence will normally be able to discover the full extent of injury and recover for reasonably certain future damages. Also, we have made occasional exceptions to the accrual rule, known as the discovery rule, in cases in which "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Id.,* (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.,* 918 S.W.2d 453, 456 (Tex.1996)). We said in *S.V. v. R.V.,* "An injury is inherently undiscoverable if it is by nature unlikely to be discovered within the prescribed limitations period despite due diligence." 933 S.W.2d 1, 7 (Tex. 1996).

▮ In the typical case involving progressive injuries, the single action rule may occasionally result in uncompensated damages, in order to vindicate other competing interests. But in asbestos-related cases, in which multiple, latent injuries may manifest years or even decades apart, the rule would produce much more erratic results. The summary judgment record reveals that no amount of due diligence would have allowed Pustejovsky to recover for mesothelioma when he brought his suit for asbestosis. It is our long-established rule that a plaintiff may recover damages for a disease that may develop in future years only if the person establishes that there is a reasonable medical probability that the disease will appear. *See Insurance Co. of N. Am. v. Myers,* 411 S.W.2d 710, 713–14 (Tex.1966); *Fisher v. Coastal Transp. Co.,* 149 Tex. 224, 230 S.W.2d 522, 523–525 (1950); *Dartez v. Fibreboard Corp.,* 765 F.2d 456, 466 (5th Cir.1985). Courts have interpreted this test to mean that the plaintiff must demonstrate a greater than fifty percent chance of incurring the future damages. *See Fibreboard*

*Corp. v. Pool,* 813 S.W.2d 658, 681 (Tex. App.—Texarkana 1991, writ denied), *cert. denied,* 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 250 (1993); *Brookshire Bros., Inc. v. Wagnon,* 979 S.W.2d 343, 353 (Tex. App.—Tyler 1998, pet. denied). Under this rule, a plaintiff who has been injured by exposure to asbestos must demonstrate a greater than fifty percent chance of developing cancer to recover future damages related to the cancer. As one court noted in an asbestos case:

> Texas would permit a plaintiff to recover damages for a disease that may develop in future years only if he introduces expert testimony establishing that there is a reasonable medical probability that the disease will appear. "Possibility alone cannot serve as the basis for recovery, for mere possibility does not meet the preponderance of the evidence standard. Certainty, however, is not required: the plaintiff need demonstrate only that the event is more likely to occur than not."

*Dartez,* 765 F.2d at 466 (quoting *Gideon,* 761 F.2d at 1137) (holding the proof adduced did not establish a reasonable probability of developing cancer). But nothing in this record demonstrates that Pustejovsky had a greater than fifty percent chance of developing cancer at the time of his first suit. As with many similarly situated asbestosis sufferers, it is unlikely that Pustejovsky could have adduced evidence at the time of his first suit that would have allowed him to recover for his future risk of cancer. *Cf. Sopha,* 601 N.W.2d at 634; *Larson,* 399 N.W.2d at 7–8; *Pierce,* 464 A.2d at 1026. We conclude that applying a single accrual rule under these circumstances would be inconsistent with the transactional approach to res judicata, further supporting Pustejovsky's argument that we should adopt a separate accrual rule in this case.

Next, the concerns that warranted the particularized discovery rule for latent occupational diseases in *Childs* are similar to the concerns here that militate for apply-

ing a separate injury rule for each distinct disease process. In *Childs*, we observed that, unlike the typical tort for traumatic injury, the prolonged latency period for some occupational diseases prevents a plaintiff from knowing immediately upon exposure whether they will contract the associated disease. *Childs*, 974 S.W.2d at 38. Likewise, because asbestosis and mesothelioma have different latency periods, a plaintiff who suffers from asbestosis may not manifest mesothelioma for several more decades, if at all. Permitting limitations to run on terminal injuries before the plaintiff knows of them is unjust. If applying the single action rule forbids a second suit, the plaintiff with asbestosis has little choice but to attempt to recover for all possible future conditions. As we noted in *Childs*, "premature litigation of speculative claims is neither efficient nor desirable." *Id.*

Allowing separate limitations for separate disease processes does not betray the purposes that limitations and the single action rule serve. Like statutes of limitations, the single action rule is intended to discourage stale and fraudulent claims. *See id.* at 38–39. But evidence about the litigation's crucial issue, whether the plaintiff actually has mesothelioma, only improves as the disease progresses from asymptomatic to diagnosable. *See id.* If limitations for an asbestos-related malignancy runs from the discovery of the cancer then damages are tried for an existing, diagnosable disease instead of for the risk or fear of cancer.

The single action rule, like limitations and res judicata, serves the purpose of giving defendants a point of repose. However, a defendant is in no different position with respect to an asbestosis plaintiff who may develop mesothelioma in the future than with an individual who contracts mesothelioma without ever suffering asbestosis. And the defendant's need for repose must be balanced against the plaintiff's need of an opportunity to seek redress for the gravest injuries, those culminating in wrongful death.

An additional policy reason for the single action rule is the need to protect defendants from vexatious, piecemeal litigation and provide judicial economy. But having to defend against the potential for cancer in every asbestosis case, if we were to allow such a claim, is arguably more vexatious and judicially inefficient than allowing a separate action for actual cancer cases.

## VII

After considering the interests underlying the statute of limitations, the discovery rule, and the single action rule, we conclude that the prior asbestosis settlement does not bar Pustejovsky's suit for mesothelioma. We hold that a person who sues on or settles a claim for a non-malignant asbestos-related disease with one defendant is not precluded from a subsequent action against another defendant for a distinct malignant asbestos-related condition. The diagnosis of a malignant asbestos-related condition creates a new cause of action, and the statute of limitations governing the malignant asbestos-related condition begins when a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury and he or she knows, or with reasonable diligence should know, that the malignant asbestos-related condition is likely work-related. We decline to follow *Gideon*, *Dartez*, and *Graffagnino* here, and we disapprove of *Pecorino* to the extent it holds to the contrary.

We limit our holding to asbestos-related diseases resulting from workplace exposure for several reasons. We have considered on other occasions arguments that established doctrine and procedures must change to accommodate asbestos litigation, and on some occasions made those changes. *See, e.g., Owens-Corning v. Carter*, 997 S.W.2d 560 (Tex.1999) (upholding constitutionality of borrowing statute and

**654**

forum non conveniens statutes applicable to asbestos litigation), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 500, 145 L.Ed.2d 386 (1999); *Temple-Inland,* 993 S.W.2d at 89; (rejecting cause of action for fear of asbestos-related cancer); *In re Ethyl,* 975 S.W.2d 606 (Tex.1998) (upholding trial court's discretion in consolidation and trial management of mass torts); *Owens-Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35 (Tex.1998) (recognizing substantive due process limits on aggregate of punitive damages awarded in multiple jurisdictions); *CSR, Ltd. v. Link,* 925 S.W.2d 591 (Tex.1996) (considering mass torts' special circumstances warranting review of a special appearance by mandamus); *Gaulding v. Celotex, Corp.,* 772 S.W.2d 66 (Tex.1989) (rejecting theory of collective causation in asbestos suit against multiple defendants). In *Ethyl,* we recognized that asbestos litigation is a mature tort. *Id.* at 610. The judicial system has had extensive experience dealing with the issues, and the relevant medical science is advanced. We are unaware of any other toxic-exposure torts currently in litigation that present these circumstances.

\* \* \*

For these reasons, we conclude that Pustejovsky's evidence created a question of fact precluding summary judgment on the grounds of limitations. Accordingly, we reverse the court of appeals' judgment and remand the cause to the trial court for further proceedings.

Justice HANKINSON did not participate in the decision.