# Supreme Court of Texas

No. 24-0090

Ageron Energy, LLC,

*Petitioner*,

v.

ETC Texas Pipeline, Ltd., and LG PL, LLC,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

JUSTICE BUSBY, joined by Justice Devine, concurring in the denial of the petition for review.

This case involves a subsurface trespass causing injury to a neighboring mineral estate. As we have recognized, a mineral lessee can sue for trespass to or interference with its subsurface development rights. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 49 (Tex. 2017). The majority opinion in the court of appeals undermines this important protection of mineral rights, holding that a lessee's suit can be barred by res judicata even if its claims for interference with subsurface development are not yet ripe and could not

have been brought earlier. That holding—which would put lessees in an impossible position—is contrary to our cases.

Specifically, the court of appeals concluded that the defendant trespasser was entitled to dismissal of claims for injury to mineral development rights because it conclusively established that a *surface*-injury claim accrued before the plaintiff leased the minerals. 697 S.W.3d 334, 346-48 (Tex. App.—El Paso 2023). The court reasoned that this surface injury—in which corrosive gas injected by the defendant escaped and killed some cows—"resulted in accrual of . . . any and all other claims . . . arising from the same allegedly wrongful conduct, including mineral-interest claims, *ripe or not*." *Id.* at 346 (emphasis added). In reaching that conclusion, the court made two errors of law.

***First***, the court held "the fact that a claim may be unripe will not stop it from accruing at the same time as a ripe claim based on an earlier injury caused by the same wrongful conduct." *Id.* To the contrary, we have held that res judicata principles do not bar a plaintiff's claim unless that claim "arises out of the same subject matter of a previous suit *and* . . . [,] through the exercise of diligence, *could have been litigated in a prior suit*." *Barr v. Resol. Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992) (emphases added).

In other words, claim preclusion blocks a second possible bite at the apple, not a first bite. The "transactional approach [to res judicata we] set out in *Barr* does not necessarily penalize a plaintiff for not bringing a claim arising out of the same facts that nonetheless could not have been litigated in the initial action." *Hallco Tex., Inc. v. McMullen County*, 221 S.W.3d 50, 60 (Tex. 2006) (quoting *Pustejovsky v. Rapid-*

2

*Am. Corp.*, 35 S.W.3d 643, 651 (Tex. 2000)). And a claim could not have been litigated in the initial action unless it was ripe at that time—that is, unless a "complete and present cause of action" had accrued. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 812 (2024).

***Second***, the court of appeals misunderstood when a complete and present cause of action accrues for injury to mineral development rights. The court found our precedent unhelpful in deciding between ETC's accrual theory (when trespassing gas reaches a particular location or concentration) and Ageron's accrual theory (when a drilling attempt fails). 697 S.W.3d at 344. But our cases show this is a false dichotomy; neither position is correct.

Instead, "[a]n unauthorized interference with the place where the minerals are located constitutes a trespass as to the mineral estate only if the interference *infringes on the mineral lessee's **ability** to exercise its rights*" to "explore, obtain, produce, and possess the minerals subject to the lease." *Lightning Oil*, 520 S.W.3d at 49 (emphasis altered). "[S]peculation [about future interference] is not enough" to meet this standard, *id.*, and "the mere fact that contaminants have migrated into the subsurface space covered by a mineral lease does not itself establish [injury]." *Regency Field Servs., LLC v. Swift Energy Operating, LLC*, 622 S.W.3d 807, 820 (Tex. 2021). The various "triggering events" that bewildered the court of appeals, *see* 697 S.W.3d at 344 n.6, are simply types of evidence that could be offered in a particular case to show when (or whether) migration infringed on the mineral lessee's development rights.

3

Although the court of appeals' reasons were mistaken, I cannot say with confidence that the result it reached—dismissal of the lessee's claims—was incorrect. Under *Lightning Oil*'s accrual rule, there was evidence that the trespassing gas infringed on mineral development rights before the lessee acquired its interest. In my view, whether that evidence was conclusive is not a question important to the jurisprudence. I therefore join my colleagues in voting to deny the lessee's petition. But I write separately to explain the court of appeals' legal errors so they will not unsettle the law or diminish subsurface property rights, which are of vital importance in this State.

**I**

This case involves the same injection well at issue in our 2021 decision in *Regency Field Services*. Respondent ETC's predecessor, Regency, received a permit to dispose of hydrogen sulfide ($H_2S$)—a poisonous, corrosive gas—by injecting it into a depleted mineral formation from a well located on property adjacent to the Dickinson Ranch. Such permits do not authorize an infringement of any private property rights. *See* TEX. WATER CODE § 27.104; 30 TEX. ADMIN. CODE § 305.122(d); *FPL Farming Ltd. v. Env't Processing Sys., L.C.*, 351 S.W.3d 306, 310-14 (Tex. 2011).

In 2012, $H_2S$ escaped to the surface of the ranch and killed some of Jeff Dickinson's cows. In 2014, the Dickinsons (who owned both the surface and mineral estates at the time) and other neighboring landowners sued Regency for trespass, nuisance, and other theories, alleging injuries from the migration of $H_2S$ under their property. The litigation settled, and the settlement agreement is not in the record.

4

Petitioner Ageron is the lessee of the mineral estate underlying the Dickinson Ranch. Ageron's predecessor leased the minerals from the Dickinsons in 2019, and Ageron acquired the lease in 2020. Ageron sought to drill a well in 2022 and asked ETC to pause injection operations while it did so, but ETC refused. Ageron took precautions that its experts thought would allow it to drill through the $H_2S$ plume, but $H_2S$ ate through the drill pipe and the well had to be plugged. Ageron then sued ETC for trespass, nuisance, and other theories based on interference with its mineral development rights. ETC moved to dismiss for lack of jurisdiction, contending Ageron lacked standing because the mineral development rights were injured before it leased them.

The trial court denied the motion and ETC filed an interlocutory appeal. The court of appeals reversed by a 2-1 vote and rendered judgment dismissing the case for lack of standing. The court of appeals majority expressed uncertainty about whether claims for injury to the rights to develop minerals underlying the Dickinson Ranch accrued before Ageron acquired its lease, finding our precedent unhelpful in answering that question. 697 S.W.3d at 342-46. Instead, the court held that any claims for injury to the mineral development rights accrued along with the surface injury to the cows, regardless of whether the mineral claims were ripe at that time. *Id.* at 346-47.

## II

I begin by explaining why the court of appeals majority was wrong to hold that res judicata can bar the prosecution of unripe claims. Then, I address when Ageron's claims for interference with its mineral

5

development rights became ripe, as the court of appeals should have done under our precedent.

### A. Only claims that could have been litigated in a prior suit are barred by res judicata.

The court of appeals majority held "the fact that a claim may be unripe will not stop it from accruing at the same time as a ripe claim based on an earlier injury caused by the same wrongful conduct." 697 S.W.3d at 346. This holding is doubly incorrect.

First, it fails to appreciate that when different property interests are involved, the wrongful conduct that injures them is often distinct. Thus, while injecting migrating gas that escapes and kills a cow wrongfully infringes the surface estate's right to exclude damage-causing material, migrating gas by itself does not wrongfully interfere with a mineral lessee's non-possessory right to explore for and produce minerals. *See Regency*, 622 S.W.3d at 820 (rejecting position that migration of contaminants into subsurface space covered by mineral lease alone is actionable by lessee).

Second, and more fundamentally, the court of appeals majority's holding is contrary to the very definition of res judicata, which requires a defendant to show that the claim it seeks to bar was ripe to be litigated at the time of the initial suit. The affirmative defense of "res judicata, or claim preclusion, bars a second action by parties and their privies on matters actually litigated in a previous suit, as well as claims which, through the exercise of diligence, could have been litigated in a prior suit." *Hallco Tex.*, 221 S.W.3d at 58 (internal quotation marks omitted). "We apply the transactional approach to res judicata, which requires

6

claims arising out of the same subject matter to be litigated in a single lawsuit." *Id.* But "[w]hen we adopted the transactional approach to res judicata, we stated that a subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which through the exercise of diligence, *could have been litigated* in a prior suit." *Schneider Nat'l Carriers v. Bates*, 147 S.W.3d 264, 278 (Tex. 2004) (emphasis in original) (internal quotation marks omitted).[1]

The court of appeals majority tried to ground its contrary holding in the single-action rule, which provides an important check on duplicative litigation. But that rule is simply "a species of res judicata that prohibits splitting a single cause of action and subsequently asserting claims that *could have been litigated in the first instance.*" *Pustejovsky*, 35 S.W.3d at 647 (emphasis added); *see also Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex. 1985) (same); *Pierce v. Reynolds*, 329 S.W.2d 76, 78 (Tex. 1959) ("The rule against splitting causes of action . . . is simply a branch of the broader doctrine of res adjudicata

---

[1] Commentators likewise frame the rule in terms of whether the legal injury was actionable at the time of the earlier suit. For example, Corpus Juris explains that "[t]he rule against splitting causes of action . . . is restricted in its application to claims and demands which are parts of a single and indivisible cause of action *and which are capable of recovery in the first action.*" 1A C.J.S. Actions § 213 (May 2025 Update) (emphasis added). Claim preclusion therefore applies "when both actions or claims are initially available to the plaintiff." 50 C.J.S. Judgments § 976 (May 2025 Update). Wright and Miller agree that, rather than requiring plaintiffs "to amend [their complaints] to add later maturing claims, . . . [t]he better rule is that a claim for damages need include only matters arising out of injuries inflicted before the action is filed." 18 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 4409 (3d ed. Sept. 2025 Update).

. . . .”).  Obviously, a claim that was unripe at the time of the first suit could not have been litigated then.  *See Patterson v. Planned Parenthood of Houston & Se. Tex.*, 971 S.W.2d 439, 442 (Tex. 1998) (explaining that "ripeness examines when [an] action may be brought" by considering whether "the facts have developed sufficiently so that an injury has occurred or is likely to occur").  Res judicata principles—including the single-action rule—thus allow the claim to be brought in a second suit.[2]

We have adopted just such an understanding for nuisances, which Ageron alleges.  As we have explained, the classification of a nuisance as permanent or temporary turns on "whether an earlier recovery of damages is res judicata"—that is, "whether one or a series of suits is required." *Schneider*, 147 S.W.3d at 275.  When future harm cannot be predicted with reasonable certainty and thus included in a damages award, "the nuisance is a temporary one and a claimant must bring a series of suits involving the same parties, pleadings, and issues as each injury occurs." *Id.* at 278.  Thus, as discussed below, the correct accrual question is whether harm to mineral development rights could have been evaluated with reasonable certainty when escaping $H_2S$ killed the cows.

The court of appeals majority also pointed to our decision in *Regency Field Services*, but that case is not to the contrary.  *Regency* did not involve a mix of claims for different wrongs to surface and mineral

---

[2] Similarly, earlier articulations of the single-action rule explain that a plaintiff "would not be allowed to divide th[e] cause of action so as to maintain several suits thereon when a single action *would suffice*." *Pierce*, 329 S.W.2d at 77-78 (emphasis added).  When a claim is not ripe to be brought at the time of the first suit, a single action does not suffice.

interests. *See Regency*, 622 S.W.3d at 813. And the portion of *Regency* the court of appeals quoted cites *Pustejovsky*, which (as just explained) requires that the claim could have been litigated in the initial action.[3] Nothing in *Regency* remotely suggests that unripe claims for which future harm cannot reasonably be determined must nonetheless be asserted along with ripe claims or be foreclosed by res judicata. A res judicata rule requiring parties to assert unripe claims would be pointless, as such claims would be swiftly dismissed. Such a rule would put the plaintiff to a catch-22: assert the unripe claims now and have them dismissed for lack of jurisdiction, or wait until they ripen and have them rejected based on res judicata. No authority requires that result.

Instead, assuming for argument's sake that the single-action rule applied, *Regency* held the defendant had not shown *any* of the claims had yet accrued, so they were not barred by limitations. *See* 622 S.W.3d at 817-18. We expressly "d[id] not address whether the single-action rule required [the lessee] to bring all of its claims . . . in the same action." *Id.* at 818. For these reasons, *Regency* does not alter our cases holding that res judicata bars only claims that could have been asserted in the initial action.

### B. Claims for injury to mineral development rights accrue when the lessee's ability to exercise those rights is infringed.

The question the court of appeals should have decided is when claims for interference with mineral development rights accrued. Could

---

[3] *See* 697 S.W.3d at 346 (quoting *Regency*, 622 S.W.3d at 815 (citing *Pustejovsky*, 35 S.W.3d at 646)).

the Dickinsons have asserted such claims in their 2014 suit, or at some other time before Ageron acquired its lease?

ETC filed a jurisdictional plea challenging Ageron's standing with supporting evidence. Accordingly, as in a traditional motion for summary judgment, ETC had the burden to show when the claims accrued. *See, e.g.*, *Eagle Oil & Gas v. TRO-X, L.P.*, 619 S.W.3d 699, 708 (Tex. 2021); *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019); *Alamo Heights ISD v. Clark*, 544 S.W.3d 755, 771 (Tex. 2018); *Musgrave v. Owen*, 67 S.W.3d 513, 522 (Tex. App.—Texarkana 2002, no pet.).

Unless an accrual date is prescribed by statute, a cause of action generally accrues, and the statute of limitations begins to run, when facts come into existence that authorize a claimant to seek judicial relief. *Schneider*, 147 S.W.3d at 279. Texas distinguishes between "interfering with the place where . . . minerals are found," which belongs to the surface owner, and "interfering with the minerals themselves," which belong to the mineral owner or its lessee. *Lightning Oil*, 520 S.W.3d at 50. A mineral lessee generally has "the rights to explore, obtain, produce, and possess the minerals subject to the lease." *Id.* at 49. But there is no "right to possess the specific place or space where the minerals are located." *Id.*

Accordingly, an "interference with the place where the minerals are located constitutes a trespass as to the mineral estate only if the interference infringes on the mineral lessee's *ability to exercise its rights*." *Id.* (emphasis added). The migration of contaminants into the subsurface space belonging to the surface owner does not alone establish injury to the mineral estate. *Regency*, 622 S.W.3d at 820.

10

The court of appeals majority recited but ultimately declined to apply these general principles from our cases, opining that much more granular and fact-specific accrual triggers need to be established in this area. For example, the court of appeals majority urged this Court to specify whether accrual occurs when the trespassing matter reaches a specific location or concentration, when a geological study is commissioned, when the mineral estate is marketed, when a drilling contract is entered into, or when a drilling attempt fails. 697 S.W.3d at 342, 344 & n.6.

But setting such triggers is neither necessary nor advisable. The circumstances the court of appeals identified are simply facts that may tend to show, in a particular case, whether or when interference with the lessee's ability to exercise its mineral development rights occurs. That is the accrual rule our cases have adopted, and I disagree with the court of appeals that further legal guidance is needed. Instead, such guidance must come from the parties developing a factual record in each case regarding actual interference with the ability to exercise the mineral rights at issue. Parties would be well advised to address this question directly with expert testimony grounded in available data.

Applying this rule here, the court of appeals should have decided whether evidence regarding the nature and extent of subsurface $H_2S$ invasion demonstrated with reasonable certainty that the gas would have interfered with mineral exploration or production before Ageron acquired its lease in 2020. As noted, *Regency* teaches that the presence of the gas alone does not establish injury. Nor does the escape of enough gas to kill cows on the surface in 2012—a fact emphasized by the court

11

of appeals—absent evidence that the gas in the subsurface at that time would have infringed the ability to develop minerals.

ETC points to evidence that injected $H_2S$ forced a well much farther away than Ageron's drilling site to shut down by 2012, although that well was perforated in the disposal formation. ETC also provided a summary of expected testimony from the Dickinsons' experts in the 2014 litigation that no prudent operator would risk drilling on their land, depriving them of royalties and decreasing the value of the mineral estate that Ageron later leased. On the other hand, ETC's predecessor Regency took the opposite position in that litigation, contending that any injury to mineral development was speculative in 2014. In addition, Ageron points out that the Railroad Commission found in 2013 that injection was not endangering mineral production, and Ageron's experts thought the gas could be drilled through safely as late as 2022.

Having reviewed the record and considered the parties' arguments, I cannot say with confidence that the court of appeals' judgment dismissing Ageron's claims for lack of standing was incorrect. There was certainly some evidence that trespassing gas infringed on mineral development rights before Ageron acquired its interest, and I do not regard the question whether that evidence was conclusive as important to the jurisprudence of the State. Because it is not clear that the court of appeals' legal errors led to an improper judgment, I join my colleagues in voting to deny the petition for review.

_____
J. Brett Busby
Justice

**OPINION FILED:** October 31, 2025

13