# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-04-00029-CV

---

**R.C. Crawford and Crawford Heavy and Marine Construction Limited, Appellants**

**v.**

**Texas Department of Transportation, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
### NO. GN204444, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

In this case, we must decide the effect of a legislative grant of permission to sue appellee the Texas Department of Transportation following an administrative proceeding and subsequent appeals. Appellants R.C. Crawford and Crawford Heavy and Marine Construction Limited (collectively, "Crawford") appeal from the grant of summary judgment in favor of TxDOT and dismissal of the case. In one issue, Crawford contends that the district court erred in dismissing the case because it ignored the effect of a legislative authorization for Crawford to bring suit against TxDOT. Because we hold that Crawford may not recover attorney's fees in a breach of contract action against the State and that Crawford is estopped from repudiating his trial court filings as they relate to his actual damages claims, we affirm those portions of the trial court's judgment. However,

because we hold that TxDOT did not establish as a matter of law that dismissal of Crawford's consequential damages claims was proper, we reverse and remand those claims to the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

In light of the unusual procedural posture of this case, we set forth its history in some length. The events giving rise to this suit began in 1991, when Crawford entered into a $600,000 contract with TxDOT to repave two segments of Interstate 10 in and near Houston. Disagreement arose concerning the performance of the parties' contractual obligations, including Crawford's difficulty in providing concrete that met TxDOT's strength standards, which led to the project being shut down three times. In June 1992, Crawford and TxDOT negotiated an agreement releasing Crawford from the project. Crawford then filed an administrative claim against TxDOT seeking $328,737.73 in damages for breach of contract, $168,492.54 for attorney's fees and expenses, and interest. In late 1993, the parties conducted a nine-day hearing before an administrative law judge at the State Office of Administrative Hearings.

After hearing witness testimony at the hearing, Crawford came to believe that TxDOT had additional documents about the specifications of the construction project. Concerned that TxDOT wrongfully withheld information from him, Crawford went to TxDOT's division offices in Austin to search for these documents.[1] TxDOT initially gave Crawford access to several files and allowed him to use its copy machine to photocopy documents. In the course of his visits, Crawford

---

[1] Crawford personally conducted the initial investigation.

2

spoke to TxDOT employees about additional documents that might be elsewhere. TxDOT declined

to give Crawford further access to its files after learning he was involved in litigation against it.

Crawford then filed several broad open records requests, seeking the full project files

and other documents. TxDOT did not provide Crawford with additional documents, explaining that

the cost would be overly burdensome and that it had already given Crawford all of the project files.

In early November 1993, Crawford filed a motion to compel production of the allegedly withheld

documents. The ALJ denied the motion and ordered the parties to resolve the dispute themselves.

Crawford, TxDOT employees, and TxDOT's attorney met to discuss the document request, and

Crawford was given a few additional documents. Crawford's attorney then filed a motion for

sanctions, urging that TxDOT's pleadings be struck, that attorney's fees be awarded in Crawford's

favor, and that the documents be produced. The ALJ denied Crawford's motion, stating that TxDOT

had made a reasonable effort to supply the documents. Crawford filed five additional documents

and made no further complaints related to the allegedly withheld documents.

In early June 1994, the ALJ issued a Proposal for Decision, recommending that

Crawford recover $56,674.18 for his breach of contract claims and denying attorney's fees. TxDOT

adopted most of the PFD, but the agency rejected some findings of fact and conclusions of law for

lack of substantial evidence and reduced the award to $35,374.18. Crawford filed a *pro se* request

for review in district court, which affirmed the agency's order. Crawford appealed to this Court,

which vacated the trial court's judgment for want of jurisdiction, holding that Crawford had no right

of review of the TxDOT order, failed to meet the jurisdictional prerequisite of filing a motion for

rehearing at the administrative level, and had no constitutional claim arising from the breach of

3

contract claim. *Crawford Heavy & Marine Constr. Ltd. v. Texas Dep't of Transp.*, No. 03-95-00327-CV, 1996 WL 591171, at *2, 4 (Tex. App.—Austin May 22, 1996, writ denied) (not designated for publication).  In July 1997, TxDOT deposited $35,374.18, plus interest, into the registry of the court.  It appears that those funds have since been disbursed, mostly to Crawford's insurance and bonding companies.

Crawford then petitioned the legislature for a resolution to waive TxDOT's sovereign immunity, and in 2001, the legislature granted Crawford permission to sue.  Tex. S. Con. Res. 1, 77th Leg., R.S., 2001 Tex. Gen. Laws 6405 ("Resolution").  The Resolution granted Crawford "permission to sue the State of Texas and the Texas Department of Transportation subject to Chapter 107, Civil Practices and Remedies Code . . . in Travis County; and . . . [t]hat the total of all damages . . . including any court costs, and any prejudgment interest awarded under law, may not exceed $3 million, plus the addition to that amount of any attorney's fees."  *Id.* at 6405-06.

In late 2002, Crawford filed this suit against TxDOT in a Travis County district court, again asserting breach of contract and seeking the same actual damages he sought in the administrative proceeding, plus consequential damages for lost business opportunities and lost bonding capacity and attorney's fees incurred in the administrative claim.  Both parties filed motions for summary judgment, but only TxDOT set its motion for hearing.  The district court granted TxDOT's motion and dismissed Crawford's suit, and Crawford appeals.

## STANDARD OF REVIEW

The standards under which we review the granting of summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled

4

to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Pustejovsky v. Rapid-Am. Corp.*, 35 S.W.3d 643, 645-46 (Tex. 2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant moving for summary judgment on an affirmative defense must conclusively establish each element of the affirmative defense to prevail. *Pustejovsky*, 35 S.W.3d at 646. When, as here, the trial court did not state the basis for its decision in its order, the appealing party must show that it is error to base summary judgment on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## ANALYSIS

In its motion for summary judgment, TxDOT argued that Crawford's suit should be dismissed for lack of jurisdiction and that attorney's fees were not recoverable against the State, and asserted the affirmative defenses of res judicata, statute of limitations, and laches.

At the outset, we reject Crawford's assertion that the Resolution prohibits dismissal of his suit. The Resolution states that Crawford is "granted permission to sue the State of Texas and the Texas Department of Transportation subject to Chapter 107, Civil Practice and Remedies Code." Resolution at 6405. Under chapter 107, permission to sue is subject to several conditions, including that "the state reserves *every defense*, except the defense of immunity from suit without legislative permission." Tex. Civ. Prac. & Rem. Code Ann. § 107.002(a)(8) (West 1997) (emphasis added). Section 107.002 specifically provides that legislative permission to sue does not affect "the state's ability to plead res judicata to any issue," *id.* § 107.002(a)(9), and a suit brought pursuant to a resolution "must be tried as other civil suits," and "the alleged cause of action must be proved under

5

the law of this state as in other civil suits." *Id.* § 107.002(a)(4), (6). Thus, the ability to move for summary judgment was available to both parties.

Although Crawford repeatedly asserts that the legislature made findings or "intended to permit claims for 'work performed, lost bonding damages, attorney's fees and all other damages as allowed,'"[2] Crawford misunderstands the import of the resolution's so-called "findings." The resolution begins, "WHEREAS, R. C. Crawford and Crawford Heavy and Marine Construction Limited allege," and goes on to recite *Crawford's allegations* as to his entitlement to particular damages and attorney's fees. In recounting Crawford's allegations, the legislature did not make any findings as to the truth of those allegations, the validity of Crawford's claims, or his entitlement to damages. *See id.* § 107.002(a)(5) (under resolution granting permission to sue, "neither the state, nor any of its employees, agents, departments, agencies, or political subdivisions, admits to liability for, *or to the truth of, any allegation asserted by the claimant*") (emphasis added). With the proper weight of the resolution in mind, we now examine whether TxDOT established any of its grounds for summary judgment as a matter of law.

### Attorney's Fees

Although Crawford asserts that the legislature "authorized Crawford to bring a separate claim for the attorney's fees incurred in the prosecution of the initial action," a reading of

---

[2] Crawford frames his appellate argument as follows: "The central question in this appeal involves the weight and effect of a legislative enactment and the trial court's decision to disregard the findings and mandate contained therein."

the Resolution does not support his assertion. The legislature recited Crawford's allegation that he was entitled to attorney's fees and limited the State's possible damages liability to $3 million, "plus the addition . . . of any attorney's fees." A resolution granting permission to sue does not waive the State's defenses or immunity from liability, *id*. § 107.002(a)(8), (b), and there is no statutory or contractual authority that would allow Crawford to recover his attorney's fees. Although section 38.001 of the civil practice and remedies code allows a prevailing breach-of-contract litigant to recover attorney's fees from "an individual or corporation," the State and its subdivisions are not considered individuals or corporations for purposes of this statute and therefore cannot be ordered to pay attorney's fees under section 38.001. *Base-Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 786-88 (Tex. App.—Beaumont 1995, writ denied); *Lake LBJ Mun. Util. Dist. v. Coulson*, 839 S.W.2d 880, 891-94 (Tex. App.—Austin 1992, no writ); *State v. Bodisch*, 775 S.W.2d 73, 74-75 (Tex. App.—Austin 1989, writ denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 1997). The Resolution did not, as Crawford asserts, state that he *may* or *shall* recover attorney's fees, but instead excluded attorney's fees, *if any*, from the $3 million damage limitation. The trial court did not err in granting TxDOT summary judgment as to Crawford's claims for attorney's fees incurred in the first proceeding.

### *Statute of Limitations*

TxDOT takes the position that because breach-of-contract actions are subject to a four-year statute of limitations, *see* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 1997), Crawford's suit, brought ten years after his cause of action accrued in 1992, is barred by limitations. TxDOT concedes that a resolution is subject to a two-year statute of limitations under section

7

107.002 of the civil practice and remedies code, *see id*. § 107.002(a)(2) (West 1997), but argues that because the State retains the right to assert any available defense to a claim brought pursuant to a legislative resolution, *see id*. § 107.002(a)(7), (8), the four-year limitations period should apply to bar Crawford's claims.

Crawford argues that the statute of limitations to be applied to his cause is the two-year limitation under section 107.002(a)(2), and that his lawsuit, brought pursuant to the Resolution, was timely brought within two years of the Resolution's effective date. *Id*. § 107.002(a)(2). Crawford further argues that his cause of action did not accrue and limitations did not begin to run against his contract claims until the State granted him permission to sue. *See Li v. University of Tex. Health Sci. Ctr.*, 984 S.W.2d 647, 654 n.3 (Tex. App.—Houston [14th Dist.] 1998, pet. denied) (generally, limitations do not begin to run against plaintiff seeking to sue State until State consents to be sued); *Barganier v. Guest*, 246 S.W.2d 901, 902 (Tex. Civ. App.—Waco 1952, writ ref'd); *see also Mount Pleasant Indep. Sch. Dist. v. Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989) ("Only when the legislature has clearly and explicitly waived the state's sovereign immunity may a cause of action accrue.").

Crawford first attempted to obtain judicial review of the administrative proceeding and the agency order in 1994, but his cause was dismissed because the State had not consented to be sued. He then began the process of seeking legislative permission and, once he obtained that permission, brought this suit well within the two-year time limit. Under these facts, TxDOT has not shown as a matter of law that limitations had run against Crawford's claims. Summary judgment could not have been properly granted on grounds that limitations had run.

*Laches*

TxDOT further asserts that Crawford's claims are barred by laches because they were brought ten years after the parties entered into the underlying contract. Laches is an equitable defense requiring a showing that (1) the suing party unreasonably delayed asserting his rights, and (2) due to the delay, the opposing party has made a good faith change of position to its detriment. *City of Fort Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964). TxDOT asserts that "[f]iling a lawsuit ten years after a cause of action accrued is an unreasonable delay," citing no authority to support this position, and that "it appears that Crawford did not attempt to petition the legislature until [Crawford] realized that it would not be successful in appeals to the district court and to this Court," pointing to Crawford's motion for summary judgment in which he states, "Following the dismissal [by this Court in May 1996], Crawford successfully petitioned the Legislature to waive the state's immunity from suit for this case."

We have held that TxDOT has not shown that Crawford's cause of action had accrued before he received permission to sue in 2001, and, except in very rare circumstances, laches will not bar a suit brought before limitations have run. *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998); *Culver v. Pickens*, 176 S.W.2d 167, 170-71 (Tex. 1943); *Brewer v. Nationsbank of Tex., N.A.*, 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi 2000, no pet.). Even if Crawford began his quest for a legislative resolution only after it became clear that his initial suit for judicial review was barred by sovereign immunity, that does not amount to an unreasonable delay as a matter of law. The law of sovereign immunity was hardly clear in 1994, when Crawford sought judicial review of the administrative proceeding. Indeed, the law as to whether the State can by its conduct waive its

9

immunity in a contract dispute was not made clear until much later. *See Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849 (Tex. 2002) (reversing this Court's opinion finding waiver of immunity by conduct and discussing new statutory scheme for resolution of contract disputes); *General Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591 (Tex. 2001) (same). Further, the fact that it took Crawford until 2001 to obtain a resolution does not amount to an unreasonable delay. The legislature meets every two years, and the rarity of legislative resolutions giving permission to sue would seem to indicate that obtaining such a resolution is not simple and could conceivably take more than one session to accomplish. TxDOT has not shown that Crawford unreasonably delayed the assertion of his legal rights, and we need not address whether TxDOT established the second element of laches, that it in good faith changed its position to its detriment. *See City of Fort Worth*, 388 S.W.2d at 403. On these facts, summary judgment was not properly granted on grounds of laches.

### Res Judicata

The posture of this case is somewhat unusual because both Crawford and TxDOT asserted in their motions for summary judgment that re-litigation of the claims raised in the administrative action was barred by res judicata. Crawford stated in his motion for summary judgment that res judicata should apply because he had "fully and fairly litigated [his] case before an ALJ," that TxDOT's final order "has preclusive effect for the purposes of the current matter," and that he sought only "to confirm the outcome of a previously litigated dispute" and to "enforce the original order of the ALJ and TxDOT's Executive Director." In response to TxDOT's motion, however, Crawford took a different position and asserted that res judicata barred only a *portion* of

10

his claims, arguing that his claims for attorney's fees incurred in and additional lost bonding capacity and lost business incurred after the first proceeding were not barred.

Res judicata "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit." *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Res judicata requires proof of: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on claims that were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996). Because TxDOT raised res judicata as an affirmative defense in its motion for summary judgment, it bore the burden of proving each of these elements conclusively. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996).

In this case, Crawford went through the rule-based administrative proceeding, which at the time was not specifically provided as an "exclusive remedy" for parties involved in contract disputes with TxDOT. He sought judicial review of the agency decision, but his suit was dismissed by this Court for lack of jurisdiction because there was no statutory basis for judicial review from the administrative proceeding. We decline under these circumstances to hold that this unreviewed agency decision reducing the ALJ's proposed award satisfies the first element of res judicata—that a court of competent jurisdiction has rendered a prior final judgment on the merits—so as to have res judicata effect to bar Crawford's claims brought in this later judicial proceeding.

Furthermore, Crawford's consequential damages claims for lost business and bonding capacity were not fully addressed in the first proceeding. Indeed, Crawford asserts that these

11

damages could not have been fully litigated because they were ongoing and accrued over time after the administrative proceeding was concluded. Those measures of damages, not being of a kind that could have been fully addressed in the first proceeding, are not barred by res judicata.

### Consequential Damages Jurisdiction

TxDOT asserts that Crawford cannot bring his claims for consequential damages without first exhausting his administrative remedies, relying on section 201.112 of the transportation code. Tex. Transp. Code Ann. § 201.112 (West Supp. 2004).[3] Section 201.112, enacted in 1997, after Crawford's administrative proceeding was concluded, provides that every contract dispute with TxDOT must first go through informal resolution procedures and then, if necessary, a formal administrative hearing governed by the administrative procedure act. *Id.* § 201.112(a), (b). After an ALJ issues a PFD, TxDOT's director issues a final order, which is subject to substantial evidence review in district court. *Id.* § 201.112(c), (d). These procedures, "[n]otwithstanding any other law, . . . shall constitute the exclusive remedy at law for the resolution of a claim governed by" section 201.112. *Id.* § 201.112 historical note [Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36(b), 1997 Tex. Gen. Laws 4427, 4443] (emphasis added); *see Texas Dep't of Transp. v. Jones Bros. Dirt & Paving Contractors, Inc.*, 92 S.W.3d 477, 484 (Tex. 2002).

However, section 201.112 applies only to claims filed after or pending on September 1, 1997. *See* Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36(c), 1997 Tex. Gen. Laws at 4443.

---

[3] Because the relevant provisions of this section have not changed during the pendency of this suit, for convenience we will cite to the current code.

A claim is "pending" if it has been filed before TxDOT but the claimant has not yet sought judicial review. *Id.* § 1.36(d). This dispute arose in 1992, was submitted to TxDOT's administrative proceedings, and was unsuccessfully presented for judicial review in 1994. Crawford's consequential damages, if any, flow from the breach of contract and refer back to that claim, which was presented to TxDOT and judicial review sought well before September 1997. As stated by TxDOT in its appellee's brief, "None of these claims [for attorney's fees, loss of business, or lost bonding capacity] are causes of action. The cause of action is breach of contract. Loss of business and lost bonding capacity would be a measure of damages as a result of the alleged breach of contract." We do not believe that section 201.112 applies in this case to require Crawford to submit his allegations of consequential damages to a new administrative proceeding. Without commenting on the merits, we hold that the trial court did not properly dismiss Crawford's consequential damages claims for lack of jurisdiction.

### *Actual Damages*

Although we decline to hold that Crawford's claims are barred by res judicata or that the trial court lacked jurisdiction over his allegations of consequential damages, by the position he took before the trial court, Crawford limited his claims to consequential damages, essentially abandoning his actual damages claims or conceding that he had already received his full measure of actual damages.

In the original administrative action, Crawford complained about alleged "changed conditions" of the contract, including complaints related to excessively thick pavement, which

13

required special equipment and effort to remove and replace, the type of "crash attenuator" equipment and the type of cement required by TxDOT, and changes in the locations and sizes of the repair sites, and sought damages for maintaining signs and barricades, loss of bonding capacity in the amount of $125,003.67, and maintaining a home office while the project was delayed. *See Crawford Heavy & Marine*, 1996 WL 591171, at *2 & n.4. In his original petition filed pursuant to the Resolution, Crawford largely sought the same damages, *see id.*, plus an additional $2.5 million in consequential damages that allegedly accrued after the conclusion of the administrative proceeding.

After TxDOT answered, Crawford moved for summary judgment, stating that he sought "to confirm the outcome of a previously litigated dispute" and "simply [sought] to enforce the original order of the ALJ and TxDOT's Executive Director." Crawford stated that all of his asserted causes of action arose from his breach of contract claim, which was addressed in the administrative proceeding. He further stated that, although under the Resolution he could re-litigate his breach of contract claim and allegations of actual damages in light of the allegedly withheld documents, he was "willing to forego that opportunity" and wanted only to have the original administrative order enforced, so as to "resolve this long-standing dispute in the most expeditious and fair manner available." After TxDOT moved for summary judgment, also relying on res judicata, Crawford responded that only his actual damages claims were barred and that his "remaining claims for lost business and bonding capacity" were not, stating again that the claims TxDOT paid after the administrative proceeding had "been previously litigated and brought to a final

14

conclusion." By his filings before the trial court, Crawford abandoned his quest to re-litigate his actual damages, choosing instead to seek consequential damages alone.[4]

A statement of fact in a motion for summary judgment may be viewed as a judicial admission. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) (statements in summary-judgment response and counter-motion held to be judicial admissions); *see also City Nat'l Bank v. United States*, 907 F.2d 536, 544 (5th Cir. 1990) ("this situation is unlike admissions of fact in a summary judgment brief used to determine whether or not there is a genuine issue of material fact"); *Young & Vann Supply Co. v. Gulf, Fla. & Ala. Ry.*, 5 F.2d 421, 423 (5th Cir. 1925) ("We may consider the statements in the brief as admissions of fact."); *Smith v. Altman*, 26 S.W.3d 705, 709 (Tex. App.—Waco 2000, pet. dism'd w.o.j.) ("source of a judicial admission may be facts alleged in a pleading, an agreed upon statement of fact, a stipulation, or a formal declaration made in open court"). A quasi-judicial admission that lacks the formality of a true judicial admission may be conclusive against the admitting party if giving it conclusive effect does not offend public policy and if the statement (i) is made during the course of a judicial proceeding, (ii) is contrary to an essential part of the party's theory of recovery or defense, (iii) is deliberate, clear, and unequivocal, and (iv) is not destructive of the opposing party's theories. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

---

[4] Crawford also continued to seek attorney's fees incurred in the administrative action, but, as discussed earlier, attorney's fees in a breach of contract claim are not recoverable from the State.

We recognize that Crawford's statements regarding his actual damages are not statements of fact and therefore do not fit neatly into the established rules regarding judicial admissions. However, Crawford did not argue in the alternative that his actual damages were fully and fairly litigated and should be considered final, or recant or otherwise contradict such statements in his response to TxDOT's motion for summary judgment. Crawford's arguments for judgment made before the trial court indicate that he wished only to pursue relief in the form of consequential damages. *See Boyles v. Kerr*, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g) (plaintiff stated that she was reducing her "offensive thrust" to particular claim, thus abandoning other claims). Thus, the trial court had reason to believe that Crawford did not wish to pursue the re-litigation of his actual damages, and Crawford presented no reason for the trial court to draw any other conclusion. *See Campbell v. State*, 85 S.W.3d 176, 185 (Tex. 2002) (to preserve error, plaintiff must raise issue before trial court in manner that allows trial court to make informed decision and gives opposing party opportunity to remedy defect, if possible). Further, Crawford's arguments on appeal regarding the re-litigation of actual damages conflict with the arguments he made before the trial court in his motion for summary judgment and response to TxDOT's motion and, therefore, are not subject to appellate review. Tex. R. App. P. 33.1(a); *Dreyer v. Greene*, 871 S.W.2d 697, 698 (Tex. 1993) ("As a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order to be raised on appeal."); *City of San Antonio v. Schautteet*, 706 S.W.2d 103, 104 (Tex. 1986) ("Schautteet raised the issue of violation of the open courts provision for the first time in a reply brief filed on appeal. Therefore, the issue was never before the trial court and should not have been considered by the court of appeals. 'Even constitutional challenges not expressly presented to the

16

trial court by written motion, answer or other response to a motion for summary judgment will not be considered on appeal as grounds for reversal.'") (citations omitted).

The trial court was entitled to rely on Crawford's statements, and Crawford is estopped from disclaiming them on appeal. *See Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 850-51 (Tex. 1980) (discussing judicial estoppel, ratification, and waiver; "[w]aiver . . . is sometimes spoken of as intentional conduct inconsistent with the assertion of a known right"); *American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 589 (Tex. 1975) ("One of the requirements for application of the doctrine of judicial estoppel is that the statement must be deliberate, clear, and unequivocal."); *Aetna Life Ins. Co. v. Wells*, 557 S.W.2d 144, 147 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (judicial admission is the waiver of proof made in pleadings, by stipulation, or by formal declaration in a judicial proceeding by the person against whom the estoppel is invoked). We hold that the trial court did not err in relying on Crawford's statements that he was willing to forego the re-litigation of his actual damages and in dismissing those claims.

### *Claims Arising from Allegedly Withheld Documents*

Crawford further contends that the Resolution entitles him to reassert claims "never fully and fairly litigated because of TxDOT's wrongful withholding of evidence" and to assert new claims. As discussed earlier, however, the "claims" listed in the Resolution are Crawford's allegations and the Resolution does not enumerate the claims, new or otherwise, that Crawford may assert. Instead, it simply grants him "permission to sue the State of Texas and the Texas Department of Transportation subject to Chapter 107, Civil Practice and Remedies Code." Resolution at 6405.

17

The issue of withheld documents arose after the conclusion of the administrative hearing, when Crawford became concerned that TxDOT possessed more project documents than it produced. Crawford then requested a broad range of documents from TxDOT, both in person and through open records requests, and filed a motion to compel production of documents before the ALJ. During an ALJ hearing on Crawford's motion for sanctions against TxDOT, Crawford testified about his concerns that correspondence was missing from the project file. A TxDOT employee testified that Crawford had received a full copy of the files and that one of the requested files applies to projects throughout the state and filled three or four filing cabinets. Another employee testified that all of the pertinent design division files were in the file given to Crawford. The ALJ found that TxDOT had attempted to comply with Crawford's requests and denied Crawford's motion for sanctions, allowing Crawford to submit five additional documents for consideration.

The ALJ, who was the sole judge of the credibility of the witnesses, *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 757 (Tex. App.—Austin 2000, pet. denied), determined that TxDOT made an effort to comply with production of documents. Both in the hearing on Crawford's motion for sanctions and afterward, the ALJ afforded Crawford the opportunity to demonstrate the relevance of the allegedly withheld documents and any resulting harm. Although Crawford testified extensively about his suspicions that the files he reviewed and received were incomplete, he did not specify documents he believed were omitted, identify information that could only be obtained from TxDOT, demonstrate any harm that might give rise to new claims, or make any further complaints about the documents after he supplemented the administrative record.

18

Although Crawford's petition in this cause complained about allegedly withheld documents, in his motion for summary judgment he stated he did not wish to further litigate that issue and instead wanted simply to collect on the administrative award. Crawford asserted that although the documents "could lead to additional damages," he was "willing to forego that opportunity because this matter has previously been litigated." In his response to TxDOT's motion, he did not argue that the issue should be re-litigated or otherwise addressed in this proceeding. Because Crawford stated before the trial court that he did not wish to pursue claims related to TxDOT's alleged withholding of documents and such conduct's impact on his actual damages, the trial court did not err in dismissing those claims.

**CONCLUSION**

TxDOT established as a matter of law that Crawford cannot recover attorney's fees for his breach of contract action, and therefore it was not error for the trial court to grant judgment in TxDOT's favor as to attorney's fees. In his motion for summary judgment and response to TxDOT's motion, Crawford stated that he did not wish to re-litigate his actual damages claims. The trial court therefore did not err in granting TxDOT judgment on those claims. Crawford's claims for consequential damages in the form of lost bonding capacity and lost business that accrued after the administrative proceeding were not waived or otherwise abandoned and are not barred by res judicata. Section 201.112 does not apply to Crawford's consequential damages claims because they arose out of his breach of contract cause of action, which was filed and pending before section 201.112's effective date. The trial court therefore erred in dismissing those claims. We affirm the trial court's judgment to the extent that it disposes of Crawford's claims for attorney's fees and

19

actual damages.  We reverse the judgment as it relates to consequential damages and remand the

cause to the trial court for further proceedings as to those issues.


 

 

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed:   August 26, 2004