TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-04-00029-CV






R.C. Crawford and Crawford Heavy and Marine Construction Limited, Appellants


v.


Texas Department of Transportation, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. GN204444, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N




 In this case, we must decide the effect of a legislative grant of permission to sue
appellee the Texas Department of Transportation following an administrative proceeding and
subsequent appeals. Appellants R.C. Crawford and Crawford Heavy and Marine Construction
Limited (collectively, "Crawford") appeal from the grant of summary judgment in favor of TxDOT
and dismissal of the case. In one issue, Crawford contends that the district court erred in dismissing
the case because it ignored the effect of a legislative authorization for Crawford to bring suit against
TxDOT. Because we hold that Crawford may not recover attorney's fees in a breach of contract
action against the State and that Crawford is estopped from repudiating his trial court filings as they
relate to his actual damages claims, we affirm those portions of the trial court's judgment. However,
because we hold that TxDOT did not establish as a matter of law that dismissal of Crawford's
consequential damages claims was proper, we reverse and remand those claims to the district court.


FACTUAL AND PROCEDURAL BACKGROUND


 In light of the unusual procedural posture of this case, we set forth its history in some
length. The events giving rise to this suit began in 1991, when Crawford entered into a $600,000
contract with TxDOT to repave two segments of Interstate 10 in and near Houston. Disagreement
arose concerning the performance of the parties' contractual obligations, including Crawford's
difficulty in providing concrete that met TxDOT's strength standards, which led to the project being
shut down three times. In June 1992, Crawford and TxDOT negotiated an agreement releasing
Crawford from the project. Crawford then filed an administrative claim against TxDOT seeking
$328,737.73 in damages for breach of contract, $168,492.54 for attorney's fees and expenses, and
interest. In late 1993, the parties conducted a nine-day hearing before an administrative law judge
at the State Office of Administrative Hearings.

 After hearing witness testimony at the hearing, Crawford came to believe that TxDOT
had additional documents about the specifications of the construction project. Concerned that
TxDOT wrongfully withheld information from him, Crawford went to TxDOT's division offices in
Austin to search for these documents. (1) TxDOT initially gave Crawford access to several files and
allowed him to use its copy machine to photocopy documents. In the course of his visits, Crawford
spoke to TxDOT employees about additional documents that might be elsewhere. TxDOT declined
to give Crawford further access to its files after learning he was involved in litigation against it.

 Crawford then filed several broad open records requests, seeking the full project files
and other documents. TxDOT did not provide Crawford with additional documents, explaining that
the cost would be overly burdensome and that it had already given Crawford all of the project files. 
In early November 1993, Crawford filed a motion to compel production of the allegedly withheld
documents. The ALJ denied the motion and ordered the parties to resolve the dispute themselves. 
Crawford, TxDOT employees, and TxDOT's attorney met to discuss the document request, and
Crawford was given a few additional documents. Crawford's attorney then filed a motion for
sanctions, urging that TxDOT's pleadings be struck, that attorney's fees be awarded in Crawford's
favor, and that the documents be produced. The ALJ denied Crawford's motion, stating that TxDOT
had made a reasonable effort to supply the documents. Crawford filed five additional documents
and made no further complaints related to the allegedly withheld documents.

 In early June 1994, the ALJ issued a Proposal for Decision, recommending that
Crawford recover $56,674.18 for his breach of contract claims and denying attorney's fees. TxDOT
adopted most of the PFD, but the agency rejected some findings of fact and conclusions of law for
lack of substantial evidence and reduced the award to $35,374.18. Crawford filed a pro se request
for review in district court, which affirmed the agency's order. Crawford appealed to this Court,
which vacated the trial court's judgment for want of jurisdiction, holding that Crawford had no right
of review of the TxDOT order, failed to meet the jurisdictional prerequisite of filing a motion for
rehearing at the administrative level, and had no constitutional claim arising from the breach of
contract claim. Crawford Heavy & Marine Constr. Ltd. v. Texas Dep't of Transp., No. 03-95-00327-CV, 1996 WL 591171, at *2, 4 (Tex. App.--Austin May 22, 1996, writ denied) (not designated for
publication). In July 1997, TxDOT deposited $35,374.18, plus interest, into the registry of the court. 
It appears that those funds have since been disbursed, mostly to Crawford's insurance and bonding
companies.

 Crawford then petitioned the legislature for a resolution to waive TxDOT's sovereign
immunity, and in 2001, the legislature granted Crawford permission to sue. Tex. S. Con. Res. 1,
77th Leg., R.S., 2001 Tex. Gen. Laws 6405 ("Resolution"). The Resolution granted Crawford
"permission to sue the State of Texas and the Texas Department of Transportation subject to Chapter
107, Civil Practices and Remedies Code . . . in Travis County; and . . . [t]hat the total of all damages
. . . including any court costs, and any prejudgment interest awarded under law, may not exceed $3
million, plus the addition to that amount of any attorney's fees." Id. at 6405-06.

 In late 2002, Crawford filed this suit against TxDOT in a Travis County district court,
again asserting breach of contract and seeking the same actual damages he sought in the
administrative proceeding, plus consequential damages for lost business opportunities and lost
bonding capacity and attorney's fees incurred in the administrative claim. Both parties filed motions
for summary judgment, but only TxDOT set its motion for hearing. The district court granted
TxDOT's motion and dismissed Crawford's suit, and Crawford appeals.


STANDARD OF REVIEW


 The standards under which we review the granting of summary judgment are well
established: the movant must show there is no genuine issue of material fact and that it is entitled
to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Pustejovsky v. Rapid-Am. Corp., 35 S.W.3d
643, 645-46 (Tex. 2000); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A
defendant moving for summary judgment on an affirmative defense must conclusively establish each
element of the affirmative defense to prevail. Pustejovsky, 35 S.W.3d at 646. When, as here, the
trial court did not state the basis for its decision in its order, the appealing party must show that it
is error to base summary judgment on any ground asserted in the motion. Star-Telegram, Inc. v.
Doe, 915 S.W.2d 471, 473 (Tex. 1995).


ANALYSIS


 In its motion for summary judgment, TxDOT argued that Crawford's suit should be
dismissed for lack of jurisdiction and that attorney's fees were not recoverable against the State, and
asserted the affirmative defenses of res judicata, statute of limitations, and laches. 

 At the outset, we reject Crawford's assertion that the Resolution prohibits dismissal
of his suit. The Resolution states that Crawford is "granted permission to sue the State of Texas and
the Texas Department of Transportation subject to Chapter 107, Civil Practice and Remedies Code." 
Resolution at 6405. Under chapter 107, permission to sue is subject to several conditions, including
that "the state reserves every defense, except the defense of immunity from suit without legislative
permission." Tex. Civ. Prac. & Rem. Code Ann. § 107.002(a)(8) (West 1997) (emphasis added). 
Section 107.002 specifically provides that legislative permission to sue does not affect "the state's
ability to plead res judicata to any issue," id. § 107.002(a)(9), and a suit brought pursuant to a
resolution "must be tried as other civil suits," and "the alleged cause of action must be proved under
the law of this state as in other civil suits." Id. § 107.002(a)(4), (6). Thus, the ability to move for
summary judgment was available to both parties.

 Although Crawford repeatedly asserts that the legislature made findings or "intended
to permit claims for 'work performed, lost bonding damages, attorney's fees and all other damages
as allowed,'" (2) Crawford misunderstands the import of the resolution's so-called "findings." The
resolution begins, "WHEREAS, R. C. Crawford and Crawford Heavy and Marine Construction
Limited allege," and goes on to recite Crawford's allegations as to his entitlement to particular
damages and attorney's fees. In recounting Crawford's allegations, the legislature did not make any
findings as to the truth of those allegations, the validity of Crawford's claims, or his entitlement to
damages. See id. § 107.002(a)(5) (under resolution granting permission to sue, "neither the state,
nor any of its employees, agents, departments, agencies, or political subdivisions, admits to liability
for, or to the truth of, any allegation asserted by the claimant") (emphasis added). With the proper
weight of the resolution in mind, we now examine whether TxDOT established any of its grounds
for summary judgment as a matter of law.


 Attorney's Fees

 Although Crawford asserts that the legislature "authorized Crawford to bring a
separate claim for the attorney's fees incurred in the prosecution of the initial action," a reading of
the Resolution does not support his assertion. The legislature recited Crawford's allegation that he
was entitled to attorney's fees and limited the State's possible damages liability to $3 million, "plus
the addition . . . of any attorney's fees." A resolution granting permission to sue does not waive the
State's defenses or immunity from liability, id. § 107.002(a)(8), (b), and there is no statutory or
contractual authority that would allow Crawford to recover his attorney's fees. Although section
38.001 of the civil practice and remedies code allows a prevailing breach-of-contract litigant to
recover attorney's fees from "an individual or corporation," the State and its subdivisions are not
considered individuals or corporations for purposes of this statute and therefore cannot be ordered
to pay attorney's fees under section 38.001. Base-Seal, Inc. v. Jefferson County, 901 S.W.2d 783,
786-88 (Tex. App.--Beaumont 1995, writ denied); Lake LBJ Mun. Util. Dist. v. Coulson, 839
S.W.2d 880, 891-94 (Tex. App.--Austin 1992, no writ); State v. Bodisch, 775 S.W.2d 73, 74-75
(Tex. App.--Austin 1989, writ denied); see Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West
1997). The Resolution did not, as Crawford asserts, state that he may or shall recover attorney's
fees, but instead excluded attorney's fees, if any, from the $3 million damage limitation. The trial
court did not err in granting TxDOT summary judgment as to Crawford's claims for attorney's fees
incurred in the first proceeding.


 Statute of Limitations

 TxDOT takes the position that because breach-of-contract actions are subject to a
four-year statute of limitations, see Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 1997),
Crawford's suit, brought ten years after his cause of action accrued in 1992, is barred by limitations. 
TxDOT concedes that a resolution is subject to a two-year statute of limitations under section
107.002 of the civil practice and remedies code, see id. § 107.002(a)(2) (West 1997), but argues that
because the State retains the right to assert any available defense to a claim brought pursuant to a
legislative resolution, see id. § 107.002(a)(7), (8), the four-year limitations period should apply to
bar Crawford's claims.

 Crawford argues that the statute of limitations to be applied to his cause is the two-year limitation under section 107.002(a)(2), and that his lawsuit, brought pursuant to the Resolution,
was timely brought within two years of the Resolution's effective date. Id. § 107.002(a)(2). 
Crawford further argues that his cause of action did not accrue and limitations did not begin to run
against his contract claims until the State granted him permission to sue. See Li v. University of Tex.
Health Sci. Ctr., 984 S.W.2d 647, 654 n.3 (Tex. App.--Houston [14th Dist.] 1998, pet. denied)
(generally, limitations do not begin to run against plaintiff seeking to sue State until State consents
to be sued); Barganier v. Guest, 246 S.W.2d 901, 902 (Tex. Civ. App.--Waco 1952, writ ref'd); see
also Mount Pleasant Indep. Sch. Dist. v. Lindburg, 766 S.W.2d 208, 211 (Tex. 1989) ("Only when
the legislature has clearly and explicitly waived the state's sovereign immunity may a cause of action
accrue.").

 Crawford first attempted to obtain judicial review of the administrative proceeding
and the agency order in 1994, but his cause was dismissed because the State had not consented to
be sued. He then began the process of seeking legislative permission and, once he obtained that
permission, brought this suit well within the two-year time limit. Under these facts, TxDOT has not
shown as a matter of law that limitations had run against Crawford's claims. Summary judgment
could not have been properly granted on grounds that limitations had run.

 Laches

 TxDOT further asserts that Crawford's claims are barred by laches because they were
brought ten years after the parties entered into the underlying contract. Laches is an equitable
defense requiring a showing that (1) the suing party unreasonably delayed asserting his rights, and
(2) due to the delay, the opposing party has made a good faith change of position to its detriment. 
City of Fort Worth v. Johnson, 388 S.W.2d 400, 403 (Tex. 1964). TxDOT asserts that "[f]iling a
lawsuit ten years after a cause of action accrued is an unreasonable delay," citing no authority to
support this position, and that "it appears that Crawford did not attempt to petition the legislature
until [Crawford] realized that it would not be successful in appeals to the district court and to this
Court," pointing to Crawford's motion for summary judgment in which he states, "Following the
dismissal [by this Court in May 1996], Crawford successfully petitioned the Legislature to waive the
state's immunity from suit for this case."

 We have held that TxDOT has not shown that Crawford's cause of action had accrued
before he received permission to sue in 2001, and, except in very rare circumstances, laches will not
bar a suit brought before limitations have run. Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex.
1998); Culver v. Pickens, 176 S.W.2d 167, 170-71 (Tex. 1943); Brewer v. Nationsbank of Tex., N.A.,
28 S.W.3d 801, 804 (Tex. App.--Corpus Christi 2000, no pet.). Even if Crawford began his quest
for a legislative resolution only after it became clear that his initial suit for judicial review was barred
by sovereign immunity, that does not amount to an unreasonable delay as a matter of law. The law
of sovereign immunity was hardly clear in 1994, when Crawford sought judicial review of the
administrative proceeding. Indeed, the law as to whether the State can by its conduct waive its
immunity in a contract dispute was not made clear until much later. See Texas Natural Res.
Conservation Comm'n v. IT-Davy, 74 S.W.3d 849 (Tex. 2002) (reversing this Court's opinion
finding waiver of immunity by conduct and discussing new statutory scheme for resolution of
contract disputes); General Servs. Comm'n v. Little-Tex Insulation Co., 39 S.W.3d 591 (Tex. 2001)
(same). Further, the fact that it took Crawford until 2001 to obtain a resolution does not amount to
an unreasonable delay. The legislature meets every two years, and the rarity of legislative resolutions
giving permission to sue would seem to indicate that obtaining such a resolution is not simple and
could conceivably take more than one session to accomplish. TxDOT has not shown that Crawford
unreasonably delayed the assertion of his legal rights, and we need not address whether TxDOT
established the second element of laches, that it in good faith changed its position to its detriment. 
See City of Fort Worth, 388 S.W.2d at 403. On these facts, summary judgment was not properly
granted on grounds of laches.


 Res Judicata

 The posture of this case is somewhat unusual because both Crawford and TxDOT
asserted in their motions for summary judgment that re-litigation of the claims raised in the
administrative action was barred by res judicata. Crawford stated in his motion for summary
judgment that res judicata should apply because he had "fully and fairly litigated [his] case before
an ALJ," that TxDOT's final order "has preclusive effect for the purposes of the current matter," and
that he sought only "to confirm the outcome of a previously litigated dispute" and to "enforce the
original order of the ALJ and TxDOT's Executive Director." In response to TxDOT's motion,
however, Crawford took a different position and asserted that res judicata barred only a portion of
his claims, arguing that his claims for attorney's fees incurred in and additional lost bonding capacity
and lost business incurred after the first proceeding were not barred.

 Res judicata "prevents the relitigation of a claim or cause of action that has been
finally adjudicated, as well as related matters that, with the use of diligence, should have been
litigated in the prior suit." Barr v. Resolution Trust Corp., 837 S.W.2d 627, 628 (Tex. 1992). Res
judicata requires proof of: (1) a prior final judgment on the merits by a court of competent
jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on
claims that were raised or could have been raised in the first action. Amstadt v. United States Brass
Corp., 919 S.W.2d 644, 652 (Tex. 1996). Because TxDOT raised res judicata as an affirmative
defense in its motion for summary judgment, it bore the burden of proving each of these elements
conclusively. See Johnson & Johnson Med., Inc. v. Sanchez, 924 S.W.2d 925, 927 (Tex. 1996).

 In this case, Crawford went through the rule-based administrative proceeding, which
at the time was not specifically provided as an "exclusive remedy" for parties involved in contract
disputes with TxDOT. He sought judicial review of the agency decision, but his suit was dismissed
by this Court for lack of jurisdiction because there was no statutory basis for judicial review from
the administrative proceeding. We decline under these circumstances to hold that this unreviewed
agency decision reducing the ALJ's proposed award satisfies the first element of res judicata--that
a court of competent jurisdiction has rendered a prior final judgment on the merits--so as to have
res judicata effect to bar Crawford's claims brought in this later judicial proceeding.

 Furthermore, Crawford's consequential damages claims for lost business and bonding
capacity were not fully addressed in the first proceeding. Indeed, Crawford asserts that these
damages could not have been fully litigated because they were ongoing and accrued over time after
the administrative proceeding was concluded. Those measures of damages, not being of a kind that
could have been fully addressed in the first proceeding, are not barred by res judicata. 


 Consequential Damages Jurisdiction

 TxDOT asserts that Crawford cannot bring his claims for consequential damages
without first exhausting his administrative remedies, relying on section 201.112 of the transportation
code. Tex. Transp. Code Ann. § 201.112 (West Supp. 2004). (3) Section 201.112, enacted in 1997,
after Crawford's administrative proceeding was concluded, provides that every contract dispute with
TxDOT must first go through informal resolution procedures and then, if necessary, a formal
administrative hearing governed by the administrative procedure act. Id. § 201.112(a), (b). After
an ALJ issues a PFD, TxDOT's director issues a final order, which is subject to substantial evidence
review in district court. Id. § 201.112(c), (d). These procedures, "[n]otwithstanding any other law,
. . . shall constitute the exclusive remedy at law for the resolution of a claim governed by" section
201.112. Id. § 201.112 historical note [Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36(b),
1997 Tex. Gen. Laws 4427, 4443] (emphasis added); see Texas Dep't of Transp. v. Jones Bros. Dirt
& Paving Contractors, Inc., 92 S.W.3d 477, 484 (Tex. 2002).

 However, section 201.112 applies only to claims filed after or pending on September
1, 1997. See Act of June 1, 1997, 75th Leg., R.S., ch. 1171, § 1.36(c), 1997 Tex. Gen. Laws at 4443. 
A claim is "pending" if it has been filed before TxDOT but the claimant has not yet sought judicial
review. Id. § 1.36(d). This dispute arose in 1992, was submitted to TxDOT's administrative
proceedings, and was unsuccessfully presented for judicial review in 1994. Crawford's
consequential damages, if any, flow from the breach of contract and refer back to that claim, which
was presented to TxDOT and judicial review sought well before September 1997. As stated by
TxDOT in its appellee's brief, "None of these claims [for attorney's fees, loss of business, or lost
bonding capacity] are causes of action. The cause of action is breach of contract. Loss of business
and lost bonding capacity would be a measure of damages as a result of the alleged breach of
contract." We do not believe that section 201.112 applies in this case to require Crawford to submit
his allegations of consequential damages to a new administrative proceeding. Without commenting
on the merits, we hold that the trial court did not properly dismiss Crawford's consequential damages
claims for lack of jurisdiction.


 Actual Damages

 Although we decline to hold that Crawford's claims are barred by res judicata or that
the trial court lacked jurisdiction over his allegations of consequential damages, by the position he
took before the trial court, Crawford limited his claims to consequential damages, essentially
abandoning his actual damages claims or conceding that he had already received his full measure of
actual damages.

 In the original administrative action, Crawford complained about alleged "changed
conditions" of the contract, including complaints related to excessively thick pavement, which
required special equipment and effort to remove and replace, the type of "crash attenuator"
equipment and the type of cement required by TxDOT, and changes in the locations and sizes of the
repair sites, and sought damages for maintaining signs and barricades, loss of bonding capacity in
the amount of $125,003.67, and maintaining a home office while the project was delayed. See
Crawford Heavy & Marine, 1996 WL 591171, at *2 & n.4. In his original petition filed pursuant
to the Resolution, Crawford largely sought the same damages, see id., plus an additional $2.5 million
in consequential damages that allegedly accrued after the conclusion of the administrative
proceeding.

 After TxDOT answered, Crawford moved for summary judgment, stating that he
sought "to confirm the outcome of a previously litigated dispute" and "simply [sought] to enforce
the original order of the ALJ and TxDOT's Executive Director." Crawford stated that all of his
asserted causes of action arose from his breach of contract claim, which was addressed in the
administrative proceeding. He further stated that, although under the Resolution he could re-litigate
his breach of contract claim and allegations of actual damages in light of the allegedly withheld
documents, he was "willing to forego that opportunity" and wanted only to have the original
administrative order enforced, so as to "resolve this long-standing dispute in the most expeditious
and fair manner available." After TxDOT moved for summary judgment, also relying on res
judicata, Crawford responded that only his actual damages claims were barred and that his
"remaining claims for lost business and bonding capacity" were not, stating again that the claims
TxDOT paid after the administrative proceeding had "been previously litigated and brought to a final
conclusion." By his filings before the trial court, Crawford abandoned his quest to re-litigate his
actual damages, choosing instead to seek consequential damages alone. (4)

 A statement of fact in a motion for summary judgment may be viewed as a judicial
admission. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001)
(statements in summary-judgment response and counter-motion held to be judicial admissions); see
also City Nat'l Bank v. United States, 907 F.2d 536, 544 (5th Cir. 1990) ("this situation is unlike
admissions of fact in a summary judgment brief used to determine whether or not there is a genuine
issue of material fact"); Young & Vann Supply Co. v. Gulf, Fla. & Ala. Ry., 5 F.2d 421, 423 (5th Cir.
1925) ("We may consider the statements in the brief as admissions of fact."); Smith v. Altman, 26
S.W.3d 705, 709 (Tex. App.--Waco 2000, pet. dism'd w.o.j.) ("source of a judicial admission may
be facts alleged in a pleading, an agreed upon statement of fact, a stipulation, or a formal declaration
made in open court"). A quasi-judicial admission that lacks the formality of a true judicial admission
may be conclusive against the admitting party if giving it conclusive effect does not offend public
policy and if the statement (i) is made during the course of a judicial proceeding, (ii) is contrary to
an essential part of the party's theory of recovery or defense, (iii) is deliberate, clear, and
unequivocal, and (iv) is not destructive of the opposing party's theories. Mendoza v. Fidelity &
Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980).

 We recognize that Crawford's statements regarding his actual damages are not
statements of fact and therefore do not fit neatly into the established rules regarding judicial
admissions. However, Crawford did not argue in the alternative that his actual damages were fully
and fairly litigated and should be considered final, or recant or otherwise contradict such statements
in his response to TxDOT's motion for summary judgment. Crawford's arguments for judgment
made before the trial court indicate that he wished only to pursue relief in the form of consequential
damages. See Boyles v. Kerr, 855 S.W.2d 593, 601 (Tex. 1993) (op. on reh'g) (plaintiff stated that
she was reducing her "offensive thrust" to particular claim, thus abandoning other claims). Thus,
the trial court had reason to believe that Crawford did not wish to pursue the re-litigation of his
actual damages, and Crawford presented no reason for the trial court to draw any other conclusion. 
See Campbell v. State, 85 S.W.3d 176, 185 (Tex. 2002) (to preserve error, plaintiff must raise issue
before trial court in manner that allows trial court to make informed decision and gives opposing
party opportunity to remedy defect, if possible). Further, Crawford's arguments on appeal regarding
the re-litigation of actual damages conflict with the arguments he made before the trial court in his
motion for summary judgment and response to TxDOT's motion and, therefore, are not subject to
appellate review. Tex. R. App. P. 33.1(a); Dreyer v. Greene, 871 S.W.2d 697, 698 (Tex. 1993) ("As
a rule, a claim, including a constitutional claim, must have been asserted in the trial court in order
to be raised on appeal."); City of San Antonio v. Schautteet, 706 S.W.2d 103, 104 (Tex. 1986)
("Schautteet raised the issue of violation of the open courts provision for the first time in a reply brief
filed on appeal. Therefore, the issue was never before the trial court and should not have been
considered by the court of appeals. 'Even constitutional challenges not expressly presented to the
trial court by written motion, answer or other response to a motion for summary judgment will not
be considered on appeal as grounds for reversal.'") (citations omitted).

 The trial court was entitled to rely on Crawford's statements, and Crawford is
estopped from disclaiming them on appeal. See Bocanegra v. Aetna Life Ins. Co., 605 S.W.2d 848,
850-51 (Tex. 1980) (discussing judicial estoppel, ratification, and waiver; "[w]aiver . . . is sometimes
spoken of as intentional conduct inconsistent with the assertion of a known right"); American Sav.
& Loan Ass'n of Houston v. Musick, 531 S.W.2d 581, 589 (Tex. 1975) ("One of the requirements
for application of the doctrine of judicial estoppel is that the statement must be deliberate, clear, and
unequivocal."); Aetna Life Ins. Co. v. Wells, 557 S.W.2d 144, 147 (Tex. Civ. App.--San Antonio
1977, writ ref'd n.r.e.) (judicial admission is the waiver of proof made in pleadings, by stipulation,
or by formal declaration in a judicial proceeding by the person against whom the estoppel is
invoked). We hold that the trial court did not err in relying on Crawford's statements that he was
willing to forego the re-litigation of his actual damages and in dismissing those claims.


 Claims Arising from Allegedly Withheld Documents

 Crawford further contends that the Resolution entitles him to reassert claims "never
fully and fairly litigated because of TxDOT's wrongful withholding of evidence" and to assert new
claims. As discussed earlier, however, the "claims" listed in the Resolution are Crawford's
allegations and the Resolution does not enumerate the claims, new or otherwise, that Crawford may
assert. Instead, it simply grants him "permission to sue the State of Texas and the Texas Department
of Transportation subject to Chapter 107, Civil Practice and Remedies Code." Resolution at 6405. 

 The issue of withheld documents arose after the conclusion of the administrative
hearing, when Crawford became concerned that TxDOT possessed more project documents than it
produced. Crawford then requested a broad range of documents from TxDOT, both in person and
through open records requests, and filed a motion to compel production of documents before the
ALJ. During an ALJ hearing on Crawford's motion for sanctions against TxDOT, Crawford testified
about his concerns that correspondence was missing from the project file. A TxDOT employee
testified that Crawford had received a full copy of the files and that one of the requested files applies
to projects throughout the state and filled three or four filing cabinets. Another employee testified
that all of the pertinent design division files were in the file given to Crawford. The ALJ found that
TxDOT had attempted to comply with Crawford's requests and denied Crawford's motion for
sanctions, allowing Crawford to submit five additional documents for consideration.

 The ALJ, who was the sole judge of the credibility of the witnesses, Ford Motor Co.
v. Motor Vehicle Bd., 21 S.W.3d 744, 757 (Tex. App.--Austin 2000, pet. denied), determined that
TxDOT made an effort to comply with production of documents. Both in the hearing on Crawford's
motion for sanctions and afterward, the ALJ afforded Crawford the opportunity to demonstrate the
relevance of the allegedly withheld documents and any resulting harm. Although Crawford testified
extensively about his suspicions that the files he reviewed and received were incomplete, he did not
specify documents he believed were omitted, identify information that could only be obtained from
TxDOT, demonstrate any harm that might give rise to new claims, or make any further complaints
about the documents after he supplemented the administrative record.

 Although Crawford's petition in this cause complained about allegedly withheld
documents, in his motion for summary judgment he stated he did not wish to further litigate that
issue and instead wanted simply to collect on the administrative award. Crawford asserted that
although the documents "could lead to additional damages," he was "willing to forego that
opportunity because this matter has previously been litigated." In his response to TxDOT's motion,
he did not argue that the issue should be re-litigated or otherwise addressed in this proceeding. 
Because Crawford stated before the trial court that he did not wish to pursue claims related to
TxDOT's alleged withholding of documents and such conduct's impact on his actual damages, the
trial court did not err in dismissing those claims. 


CONCLUSION


 TxDOT established as a matter of law that Crawford cannot recover attorney's fees
for his breach of contract action, and therefore it was not error for the trial court to grant judgment
in TxDOT's favor as to attorney's fees. In his motion for summary judgment and response to
TxDOT's motion, Crawford stated that he did not wish to re-litigate his actual damages claims. The
trial court therefore did not err in granting TxDOT judgment on those claims. Crawford's claims
for consequential damages in the form of lost bonding capacity and lost business that accrued after
the administrative proceeding were not waived or otherwise abandoned and are not barred by res
judicata. Section 201.112 does not apply to Crawford's consequential damages claims because they
arose out of his breach of contract cause of action, which was filed and pending before section
201.112's effective date. The trial court therefore erred in dismissing those claims. We affirm the
trial court's judgment to the extent that it disposes of Crawford's claims for attorney's fees and
actual damages. We reverse the judgment as it relates to consequential damages and remand the
cause to the trial court for further proceedings as to those issues.



 

 Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed in Part; Reversed and Remanded in Part

Filed: August 26, 2004
1. Crawford personally conducted the initial investigation.
2. Crawford frames his appellate argument as follows: "The central question in this appeal
involves the weight and effect of a legislative enactment and the trial court's decision to disregard
the findings and mandate contained therein."
3. Because the relevant provisions of this section have not changed during the pendency of
this suit, for convenience we will cite to the current code.
4. Crawford also continued to seek attorney's fees incurred in the administrative action, but,
as discussed earlier, attorney's fees in a breach of contract claim are not recoverable from the State.